ANNIE GIBSON, Administratrix, etc., Respondent, v. THE ERIE RAILWAY COMPANY, Appellant.

Where a servant enters upon employment from its nature necessarily hazardous, he assumes the usual risks and perils of the service, and also those risks which are apparent to ordinary observation.

If he accepts service with knowledge of the character and position of structures, from which employes might be liable to receive injury, he cannot call upon his master to make alterations to secure greater safety, or in case of injury hold him liable.

P., plaintiff's intestate, who was in the employ of defendant as conductor of a freight train, while upon his train was struck and killed by the projecting roof of a depot building. P. had lived for many years at the place of the injury, and had been for a long time familiar with the road, passing over it daily. It did not appear that any change had been made in the building or in the road after he entered upon his employment. In an action to recover damages for the death thus caused, held (MILLER, J., dissenting), that as the peculiar character of the roof and its near approach to passing cars was as patent to the

deceased as to defendant's officers or agents, he assumed the risk when he entered upon the employment, and defendant was not liable.

The deceased, at the time of the injury, was climbing over the top of a car when the train was under way, it having just started from the station. It did not appear that his doing so had any necessary connection with his duties as conductor. *Held* (Miller, J., dissenting), that the evidence established contributory negligence.

*Gibson* v. *Erie Railway Co.* (5 Hun, 3) reversed.

(Argued December 9, 1875; decided December 21, 1875.)

Appeal from judgment of the General Term of the Supreme Court in the fourth judicial department, affirming a judgment in favor of plaintiff entered upon a verdict, and affirming an order denying a motion for a new trial. (Reported below, 5 Hun, 3.)

This action was brought to recover damages for the alleged negligent killing of Willis Parker, plaintiff's intestate.

The deceased, at the time of the accident, was a freight conductor in defendant's employ, and was in charge of a freight train going east from Buffalo. Arriving at Attica, the train stopped at the west end of the station, and Parker left the train and went into the depot. The train started up. Parker came out, caught hold of a passing car, and began to climb up to the top by the ladder at the side. He was struck by the projecting roof of the depot and killed. The track was ten feet ten inches from the side of the building. The roof projected beyond the building eight feet two inches, and was twelve feet four inches above the track. The car was nine feet six inches high. The roof had been in the condition it then was for twenty years. The deceased had been upon the road as brakeman and conductor for seven years, passing over the road once or twice a day, and had lived at Attica eighteen or twenty years. It was proved that the usual place for the conductor to ride between stations was in the caboose. There was no evidence that it was any part of his duty as conductor to get on top of the cars, or that his doing so at the time of the accident had any necessary connection with his duties.

At the close of plaintiff's evidence, and at the close of all the evidence, defendant's counsel moved for a nonsuit upon the ground that no actionable negligence on the part of defendant had been shown, and that the evidence showed negligence on the part of the deceased. The motion was denied, and defendant's counsel duly excepted.

*E. C. Sprague* for the appellant. The court erred in charging that it was for the jury to decide whether the intestate in ascending the car when in motion was in the discharge of his duty. (*Greenleaf* v. *Birth*, 9 Pet., 292; *Chandler* v. *Van Roeder*, 24 How., 224; *People* v. *Police*, 35 Barb., 651; *Herring* v. *Hoppock*, 15 N. Y., 409; *People* v. *Cook*, 8 id., 67; *Courtney* v. *Baker*, 37 N. Y. Supr. Ct., 249; *Sprong* v. *B. and A. R. R. Co.*, 60 Barb., 30; *Fitch* v. *Allen*, 98 Mass., 572.) This action could only be sustained on the ground that the defendant maintained the roof in a position dangerous to the intestate after notice that it was dangerous. (*Warner* v. *Erie R. Co.*, 39 N. Y., 470; Redf. on Railways, § 131, note 2.) Defendant was only responsible for latent defects and such as could not be guarded against by the exercise of proper care. (*DeGraff* v. *N. Y. C. R. R. Co.*, 1 T. & C., 255; *Owen* v. *N. Y. C. R. R. Co.*, 1 Lans., 108; *Greenleaf* v. *Ill. C. R. R. Co.*, 4 Am. R., 181; *Hayden* v. *Smithville Mfg. Co.*, 29 Conn., 548; *Chapman* v. *Erie R. Co.*, 55 N. Y., 579; *Dougan* v. *Champ. Tr. Co.*, 56 id., 1; *Warner* v. *Erie R. Co.*, 39 id., 468.) Plaintiff must be held to have assumed all the risks which grew out of, or were incident to, or connected with his employment. (*Cruty* v. *Erie R. Co.*, 3 T. & C., 247; *Wright* v. *N. Y. C. R. R. Co.*, 25 N. Y., 612.) The accident was caused by the contributory negligence of the intestate. (*Dougan* v. *Champ. Tr. Co.*, 56 N. Y., 1.)

*John H. Martindale* for the respondent. The defendant was chargeable with negligence towards the intestate by maintaining the roof by which he was killed. (4 Wall., 189, 196; 8 Al., 444–446; 10 Mass., 261; *Ryan* v. *Fowler*, 24 N. Y., 413–415; 49 id., 532; 53 id., 449; 52 Ill., 183.)

ALLEN, J. When the deceased entered the employment of the defendant he assumed the usual risks and perils of the service, and also the risks and perils incident to the use of the machinery and property of the defendant as it then was, so far as such risks were apparent. Accepting service with a knowledge of the character and position of the structures from which the employes might be liable to receive injury, he could not call upon the defendant to make alterations to secure greater safety, or in case of injury from risks which were apparent, he could not call upon his employer for indemnity. Lord Chief Justice COCKBURN, in *Clarke* v. *Holmes* (7 H. & N., 937), says: "No doubt, when a servant enters on an employment, from its nature necessarily hazardous, he accepts the service subject to the risks incidental to it; or if he thinks proper to accept an employment on machinery defective from its construction or from the want of proper repair, and with knowledge of the facts enters on the service, the master cannot be held liable for injury to the servant within the scope of the danger which both the contracting parties contemplated as incidental to the employment." It is not necessary to hold that this rule should be applied in all its rigor to casualties arising from the use of complex and dangerous machinery, the condition of which, or the risks involved in different conditions of it, an ordinary workman might be incapable of judging. But here the structure was permanent in its character, and the risks resulting from its location were as apparent to the ordinary laborer as to a skilled mechanic or expert. They were visible to all, and could be as well appreciated by the deceased, who had for many years resided at the place of the injury, as by the officers and agents of the company. He took service subject to all risks incident to the position and mode of construction of the station house; and if the defendant did nothing after the employment to aggravate the danger, there was no liability. The evidence does not show that there was any change in the building or in the road after the deceased entered the service of the defendant. (*Seymour* v *Maddox*, 16

Ad. & El., 327.)   It is said by ELLSWORTH, J., in *Hayden* v. *Smithville Manuf. Co.* (29 Conn., 548), that " every manufacturer has the right to choose the machinery to be used in his business in the manner most agreeable to himself, provided he does not thereby violate the law of the land.   He may select his appliances and run his mill with old or new machinery, just as he may ride in an old or new carriage, or navigate an old or new vessel.   The employe, having knowledge of the circumstances and entering service for the stipulated reward, cannot complain of the peculiar tastes and habits of his employer, nor sue him for damages sustained in and resulting from that peculiar service."

Again, if the defects in the machinery or other appliances are as well known to the servant as to the master, the servant must be regarded as voluntarily incurring the risk resulting from its use, unless the master, by urging on the servant or coercing him into danger, or in some other way, directly contributes to the injury.   (*Assop* v. *Yates*, 2 H. & N., 768 ; *Priestley* v. *Fowler*, 3 M. & W., 1 ; *Williams* v. *Clough*, 3 H. & N., 258 ; *Laning* v. *N. Y. C. R. R. Co.*, 49 N. Y., 521, per FOLGER, J.)

The intestate, as brakeman and conductor, had been familiar with this part of the road for a very long time, having passed over it daily for several months, and had been a resident of Attica, familiar with all the surroundings of the station for many years ; the peculiar construction of the roof of the station-house, the size and width of the cars and the near approach of the roof to the passing cars was as patent to the deceased as to the defendant, or any of its officers or agents.

These considerations would lead to a reversal of the judgment and a new trial ; but there are other difficulties in the way of maintaining the action.   It is conceded that if the servant is himself guilty of negligence contributing to the injury, he cannot recover of the master, although the latter has been derelict in his duty to provide suitable appliances for the particular service.   The deceased, of his own volition

and without any necessity connected with his duties as conductor of the train, so far as the evidence discloses, undertook to climb the cars when under way, and just at the point of danger, and, so far as appears, at the only point of especial risk. This he did at his peril. He did not incur the peril at the request of the defendant or its officers or agents, or in pursuance of any general or special orders of the company. He had time and might have gotten up before the train moved if there was occasion for his being on the car rather than in the " caboose," which was his usual place for riding between stations. If there was not time he could have secured it, as he had control of the movements of the train. There was no evidence that he climbed up to give directions to the head brakeman; and if that was the object it was only necessary because of his neglect to give the proper directions while the train was at rest. It is evident that this was not the occasion, as the brakeman was on the car immediately in the rear of that on which the deceased was climbing, and asked and received the necessary information as the deceased was getting up; and the latter continued on his way and was injured after that.

The judgment must be reversed and a new trial granted, costs to abide the event.

All concur; except ANDREWS, J., not voting, and MILLER, J., dissenting; FOLGER, J., concurs in result, on the ground that plaintiff's intestate had, at the time of the accident, no call of duty upon the top of the car, and there was no evidence warranting the submission of that question to the jury.

Judgment reversed.