CATHARINE DE FOREST, as ADMINISTRATRIX, ETC., PLAINTIFF, *v.* HUGH J. JEWETT, as RECEIVER OF THE ERIE RAILWAY COMPANY, DEFENDANT.

*Master and servant — the servant takes upon himself the risk of accident arising from a known and patent defect.*

Upon the trial of this action, brought to recover damages for the death of the plaintiff's intestate which was alleged to have been occasioned by the defendant's negligence, it appeared that the deceased, an employe of the defendant, while engaged in coupling cars caught his foot in an open ditch or trench, and being unable to extricate it was run over and killed. The counsel for the defendant requested the court to charge that if this ditch had remained, while deceased was there, in the condition in which it was at the time of the accident, and in plain sight and he knew of its existence, he took the risks incident to its existence, and that the plaintiff could not recover.

*Held,* that the court should have charged as requested, and erred in qualifying it by charging that that was so if he understood fully all the dangers that might under any circumstances result to him from the existence of the ditch.

MOTION for a new trial on exceptions ordered to be heard in the first instance at General Term, after a verdict rendered in favor of the plaintiff.

The action was brought to recover damages occasioned by the alleged negligent killing of the plaintiff's intestate by the defendant.

The injury of which the plaintiff complains occurred at the yard of the Erie Railway Company on Louisiana street, in the city of Buffalo. The deceased was in the employment of the defendant and was engaged in coupling cars. One car had been run off upon a track and left standing. When the next car was "kicked" off, it approached the standing car at the rate of from three to four miles an hour. In order to couple the two cars it was necessary that the coupler should step in between them while the moving car was advancing and couple the two at the instant of contact. This the deceased attempted to do. There was an open ditch under the track six or eight inches deep and about the same in width, the sides of which were perpendicular and made by two ties laid six or eight inches apart. It happened that the point at which the two cars came in contact was directly over the ditch, and as the intestate

advanced with the moving car and stepped in between the two to put in the coupling pin his foot was caught in the ditch so that he could not extricate himself and he was run over and killed. The ditch was constructed some years before the injury, for the purpose of draining the track. It was uncovered and plainly visible. There was a conflict of evidence as to whether it was practicable to construct a covered ditch at that point owing to the lowness of the surface of the ground; whether a covered ditch would have answered as well as an open one for the purpose of drainage, and whether, if covered with wood, it would not have been more unsafe than an open drain by reason of the liability of its covering to give way from decay or other causes and be broken in.

*A. G. Rice*, for the plaintiff.

*E. C. Sprague*, for the defendant

Rumsey, J.:

This case upon the facts remains as it was on the former trial, when the plaintiff had a judgment, which was reversed and a new trial ordered, as appears by the report of the case in 19 Hun, 509. The prominent facts stand out now, as they did on the former trial, that plaintiff's intestate had for some two years been engaged for the defendant as an employe coupling cars, etc., upon the same yard; that the sluice across the track which it is alleged caused the injury, was well known to him, was open to his view, was passed by him day after day, and had remained entirely unchanged all that time. The learned justice, before whom this cause was tried, as is evident from his remarks on refusing the motion for a nonsuit, thought the case of *Plank* v. *Central Railroad Company* (60 N. Y., 607) had changed or materially modified the rule of law which had before then existed in regard to the risks which an employe assumed when he entered upon any particular service. Entertaining this opinion as to the principle of that case, as the General Term did not refer to it in the opinion, it was natural for the justice to think it had been overlooked, and that if the attention of the General Term had been called to it, its ruling would have been different. While, therefore, he held that the defendant was not guilty of negligence

by reason of the manner in which the sluice was maintained under the track of the railroad, and the deceased was fully chargeable with knowledge of its existence and the place of its location, he deemed it necessary under the case of Plank to find some fact to submit to the jury, and he selected the only possible one left, which, in his own estimation, was exceedingly narrow. We think it entirely too narrow, if found in favor of the plaintiff, to warrant a verdict for her.

We think the justice erred in his view of the question decided in the *Plank Case*. No discussion was had as to what the rule was between employer and employe, and the only question seems to have been whether the facts so clearly appeared in the case as to warrant the court in applying the rule of law to those facts without the intervention of a jury to settle them. The only thing the Court of Appeals passed upon was that the facts did not so clearly appear, and for that reason the case should have been submitted to the jury. Plank was brakeman on a freight train, stopped at Palatine Bridge and run on a side track in the night when the ground was covered with snow. He was there required to couple cars, and while doing so stepped or fell into a trench two feet wide and deep which run under the track. The court says, in so many words, " the evidence of defendant's negligence was sufficient to require the submission of the question to the jury ; also that the fact of the knowledge of the deceased of the existence of the trench was not sufficient to charge him, under the circumstances, with contributory negligence," etc.

The rule that when a party enters into the employment of another he assumes the usual risks and perils of the service, and also the risks and perils incident to the use of the machinery and property of the employer as it then was, so far as such risks were apparent, is so well settled in our jurisprudence that no court would undertake to change or modify it in a mere memorandum decision, and the subsequent action of the Court of Appeals shows it had no such intention in deciding the *Plank Case*. In several cases reported since the one in 60th New York Reports, the court has distinctly recognized and approved of the rule as above stated, and that case has never been referred to as at all modifying or changing it. (*Gibson* v. *Erie Railway Co.*, 63 N. Y., 449 ; *Mehan* v. *Syracuse, B. and N. Y. R. R. Co.*, 73 id., 584 ; *DeGraff* v. *Central R. R. Co.*, 76 id., 125.)

As there was no contradictory evidence as to the knowledge of the deceased of the situation, location and condition of the sluice, during all the time he was at work upon that yard for the defendant we think he assumed all the perils incident thereto, and the justice erred in refusing the nonsuit when defendant asked for it.

After the motion for nonsuit was refused, the defendant's counsel asked the court to charge that if this sluice had remained, while the deceased was there, in the condition in which it was at the time of the accident, and in plain sight, and that he knew of its existence, he took the risks incident to its existence, and plaintiff cannot recover.

The court charged in substance that that was so if deceased understood fully all the dangers that might under any circumstances result to him from the existence of such sluice.

The defendant excepted to the refusal to charge as requested, and also to the charge as made. Both exceptions are well taken. The request, as made by the defendants, contains the true rule by which the case is to be governed according to all the authorities and should have been given to the jury without qualification.

The qualification embraces the narrow question the justice felt compelled to submit to the jury under the *Plank Case*, and is entirely too uncertain and speculative to warrant the jury in rendering a verdict upon it. This would require every case involving the knowledge of a party to be submitted to the jury, and a verdict rendered under such a charge would be a mere guess based upon the probable intelligence and discretion of the employe. The law presumes when a man enters upon any employment he has sufficient intelligence to meet its requirements, and therefore holds him responsible for its possession.

The verdict must be set aside and a new trial ordered, costs to abide event.

TALCOTT, P. J., and HARDIN, J., concurred.

New trial ordered, costs to abide the event.