THOMAS KAIN, APPELLANT, *v.* JOHN G. SMITH, RESPONDENT.

*Duty of master to furnish safe machinery — negligence of one employee in this respect,*
*no defense to the master in an action by another of his employees — Effect of knowl-*
*edge, by the employee, of the imperfections.*

The duty of the master as to furnishing suitable and safe machinery, and keep-
ing it in repair, only requires him and his agents to exercise due care to that end.
The master who fails, either himself or by his servant, to furnish safe machinery
and keep it in repair, cannot set up as a defense to an action, brought by one
of his employees to recover damages arising from such neglect, that the machi-
nery was not safe because of the negligence of a co-employee.
When the knowledge by the employee of imperfections in the machinery will
excuse the master, considered.

APPEAL by plaintiff from a judgment of nonsuit.

The action was brought to recover damages for injuries sustained
by the plaintiff, owing to a pair of car-wheels rolling off a "jigger,"
a track or incline to connect the rails with the platform of a car in
loading car-wheels.

The defendant, in the year 1872, was one of the board of trus-
tees and managers of the Vermont Central Railroad, who were
operating the Ogdensburg & Lake Champlain Railroad under a
written contract.

*Louis Hasbrouck* and *Leslie W. Russell*, for the appellant.

*Edward C. James*, for the respondent.

LEARNED, P. J.:

It is strongly urged by the defendant that the plaintiff was guilty
of contributory negligence; and that, although the nonsuit was not
put on that ground, yet that that ground will sustain it. The recent
decisions of the Court of Appeals, however, seem to tend towards
making the question of contributory negligence, in nearly every
case, one of fact. (*Stackus* v. *N. Y. C. and H. R. R. R. Co.*, 79
N. Y., 464.) Whether a plaintiff was negligent is, in other words,
whether he did what a prudent man would not have done; and that
is generally a question for the jury. The defendant insists, in this
case, that it was negligence in the plaintiff and his fellow laborers
to start the wheels with a run along the rails so that the momentum

thus acquired would send them part of the way up the "jigger." Now it seems to us that this doctrine cannot be laid down as a rule of law. Whether such an act was negligent or not must depend on many circumstances. And it is to be judged of as it appeared at the time, not in the light of the subsequent accident. The difficulty of rolling the wheels up without the momentum thus acquired; the number of men employed; the number of wheels which had already been loaded in this way; these and other matters must enter into the question of negligence. In every such labor as this there is some peril; and whether the plaintiff was negligent or not, in respect to such peril, was not, we think, in this case, to be decided by the court. Nor did the learned justice who tried the case give any intimation, in his remarks, that he thought that the plaintiff should be nonsuited for his own negligence.

The defendant was operating the railroad on which the accident occurred. Ames was the master mechanic at Ogdensburgh, with power to make repairs and to employ and discharge men. Forrest was foreman of the yard where the injury occurred. The plaintiff was employed by Ames and was put under the jurisdiction of Forrest. Forrest directed the loading up of the wheels upon the cars. The plaintiff was a carpenter and received his directions from Forrest. On the day in question Forrest ordered the plaintiff and others to go and load wheels upon cars. He told them to go and get the "jigger." They did so, and rested one end of the jigger on the end of the car which was to be loaded and the other end on the track where the wheels were. A pair of wheels with the axle weigh about 1,300 pounds. They were greasy and hard to handle. The wheels are loaded by rolling them along the track to the jigger, then up the inclined plane of the jigger upon the car. The upper end of the jigger has hooks, or grabs, to hold upon the car; the lower end rests upon the rails. It was claimed by the plaintiff, and there was some evidence on this point, that the jigger was defective, in that the hooks, or grabs, were blunt; that it was not long enough; that the lower end was "broomed up;" that one side was shorter than the other; that it was shaky in the joints. The learned justice in nonsuiting the plaintiff stated that the evidence tended to show that this implement was somewhat out of repair. But the learned justice held that the default of Forrest in

not observing that the implement was out of repair, and in not communicating this fact to his principal, was the default of a co-servant and did not make the defendant liable; that there was no evidence that Ames had anything to do with this implement, and that it was not a thing that he would consider so dangerous that he ought to give his personal attention to it, and that actual notice was not brought to Ames.

The remarks of the late chief judge, in *Malone* v. *Hathaway* (64 N. Y., 5, at p. 12), show that the question of the liability of the principal in such cases as the present has not been laid down with entire uniformity in the numerous cases decided in the Court of Appeals. The safest rule, therefore, is to take the latest decisions as being, for the present, the law. We find in *Cone* v. *Delaware, Lackawanna and Western Railroad Company* (81 N. Y., 206) that it is held that "as between the plaintiff and defendant it was the duty of the latter to furnish its employes, for use in the prosecution of its business, good and suitable machinery, and keep it in repair." This rule is found, also, in *Fuller* v. *Jewett* (80 N. Y., 46), where it is said that "acts which the master as such is bound to perform for the safety and protection of his employes, cannot be delegated, so as to exonerate the former from liability to a servant who is injured." "The duty of maintaining machinery in repair for the protection and safety of employes is the same in kind as the duty of furnishing a safe and proper machine in the first instance." But it is added: "The duty of the master to furnish suitable and safe machinery and to keep the same in repair, is relative and not absolute. He is only bound, by himself and his agents, to exercise due care to that end." We need not cite the other cases which are referred to in that opinion to support this doctrine. We understand it to be that the master is under a duty to the servant to furnish safe machinery and to keep it in repair. That, therefore, in respect to this duty the familiar doctrine as to the negligence of co-employes does not arise. And, further, that the master is not absolutely bound to furnish safe machinery and to keep it in repair, but is bound, by himself and his agents, to exercise due care to that end.

In this view of the law, the learned justice, admitting that there was evidence that the jigger was out of repair, was not justified in

holding that the defendant was not liable, because the default of Forrest was that of a co-employe. The question rather was this: Did the defendant exercise due care to furnish a safe jigger and to keep it in repair? And, in regard to this duty, it is said in *Fuller* v. *Jewett* (*ut supra*) that "the servant who undertakes or omits to, perform it is the representative of the master and not a mere co-servant." If such servant in this case was Ames, did Ames exercise due care in furnishing a safe jigger and keeping it in repair? Now, undoubtedly, the degree of care which is required may vary according to the kind of machinery furnished. And it is to this that the learned justice referred, when he said that the jigger was not a thing which Ames would consider dangerous. It may be that a less degree of care would be a discharge of duty on the part of the defendant in keeping this implement in repair, than would be in the case of a locomotive. (*Jones* v. *N. Y. C. & H. R. R. R. Co.*, 22 Hun, 284.) Still it seems to us that it was a question for the jury, what would be, in this case, due care, and whether it was exercised.

But it is urged that under the decision in *De Graff* v. *New York Central and Hudson River Railroad Company* (76 N. Y., 125), there was no evidence of want of due care. Now we must notice, as worthy of consideration, that the learned justice did not nonsuit on this ground, but on the ground that the negligence (or want of due care) was the act of Forrest, not of defendant. In the DeGraff case the court said that there was no evidence what the defect was, if there was any, and no evidence that ordinary care would have discovered the defect, or any defect which might have existed. In the present case, the defects charged to exist were such as were apparent, on a very slight inspection. They had existed for some time previous. Notice that the jigger was worn out had been given to Forrest some time before, and he had said that he had no lumber to make a new one, and similar accidents to that which caused plaintiff's injury had happened several times.

The defendant further insists that the plaintiff knew of the defects as well as the defendant, and therefore cannot recover. (*Gibson* v. *Erie Railway Company*, 63 N. Y., 449.) But the principle in that case is qualified by the exception, "unless the master, by urging on the servant, or coercing him into danger, or

in some other way directly contributes to the injury." Now, in the present case the plaintiff was directed by the foreman, under whose control he was, to take this jigger and to do this work. It would be hardly possible for him to refuse. In the Gibson case the injured party was struck by a projecting roof. He had voluntarily climbed upon a car; not at the request of the defendant or its officers. But the plaintiff here did not voluntarily expose himself to injury. There was no other jigger which he could take, and he was expressly directed to use this one. According to the argument of the defendant, the master may furnish defective machinery, if the defects are such that the employes can see them. Thus he can put the employes to the risks arising from defective machinery, or else compel them to refuse to work. There may be cases where the imperfection of the machinery is such that the servant would be voluntarily assuming the risk if he used it. But we cannot say this of the present plaintiff as a matter of law. He had never loaded wheels before or seen them loaded.

On the whole we think that the case should have gone to the jury. Judgment reversed, new trial granted, costs to abide event.

BOARDMAN, J., concurred; BOCKES, J., dissented.

Judgment reversed and new trial granted, costs to abide event.