AUGUST HAAS, Respondent, *v.* THE BUFFALO, NEW YORK AND PHILADELPHIA RAILROAD COMPANY, Appellant.

*Negligence — what risks a servant assumes when entering the employment of a railroad company.*

The plaintiff was employed by the defendant to work in its yards in breaking up and switching cars from one track to another, it being part of his business to go up to the Lackawanna spur, which was a track leading from the defendant's road to the Lackawanna road, and do the work necessary to transfer cars from one road to the other. Where the roads cross each other there are placed at the intersection of the inner rails what are called frogs, opposite to which are placed guard rails to keep the cars from leaving the track at the opening in the inner rails. These guard rails are from twelve to fifteen feet long and have to be placed from two and one-half to three inches from the main rail at the frog, and from four to five inches therefrom at their ends.

It was claimed by the plaintiff that while employed on the evening of December 16, 1883, in transferring cars at the Lackawanna spur, his heel slipped in between the guard rail and the main track, and that before he could extricate himself the car passed over him cutting off his legs. The evidence was conflicting as to whether or not it was the duty of the defendant to have caused blocks to be placed between the guard rails and the main track. The plaintiff knew at the time of entering into the defendant's service that such blocks were not used in its yard.

The defendant's counsel requested the court to charge that "the plaintiff having entered the service of the defendant with its guard rails unblocked and in practically the same condition that the guard rail in question was at the time of the accident, and the guard rails being in plain sight and the plaintiff having continued in the service of the defendant with the guard rails in that condition, he assumed the apparent risk incident to their existence in the performance of his duty, and cannot recover;" and also that "the accident which caused the plaintiff's injuries was, under the circumstances of this case, a risk which he assumed and for which the defendant is not liable."

*Held*, that the court erred in refusing so to charge.

(Bradley, J., concurred in the result, upon the ruling of the trial court to the effect that if the plaintiff did not have actual knowledge of and had not seen the particular guard rail at which he received the injury, he was for that reason permitted to recover although he was familiar with other guard rails in the yard in like manner constructed.)

APPEAL from a judgment, entered upon a verdict at the Erie Circuit, and from an order of the Erie Special Term denying a motion for a new trial made upon a case and exceptions.

*J. G. Milburn,* for the appellant.

*H. J. Swift,* for the respondent.

HAIGHT, J.: .

The plaintiff was in the employ of the defendant as drawbarman; he was engaged as one of a gang of men whose duties were to take a train of cars when it arrived, break it up, switch the cars upon the tracks on which they could be unloaded, and to gather up cars and make up trains to go out upon the road. It was a part of the plaintiff's business to go up to the Lackawanna spur, which was a track leading from the defendant's road onto the Lackawanna road, and to do the work necessary to transfer cars from one road to the other. When he first engaged in the defendant's employ he worked daytimes, afterwards he was engaged to work nights in the defendant's yard. It was his duty to handle the drawbar of the engine, to couple it on and uncouple it from cars, to throw the switch and, when required, to couple and uncouple cars from each other. The Lackawanna spur was the last switch farthest out in the defendant's yard. On the 16th day of December, 1883, at about seven o'clock in the evening, the plaintiff, in company with the other members of the gang with which he worked, was engaged in pulling a pin to cut off a car on the Lackawanna spur. As he stepped back he stepped on to the guard rail, when his heel slipped in between it and the rail of the main track; he fell down and the car passed over him cutting off his legs.

Upon the trial it was claimed that the defendant was guilty of negligence for the reasons: First. That the guard rail was not properly constructed. Second. That it was not blocked between the guard rail and the rail of the main track. At every place where there is a switch by which one track enters another, the inner rails have to cross each other thus necessitating an opening through those rails. The device by which this is accomplished is known as a frog. Opposite these frogs guard rails have to be placed so as to keep the cars from leaving the track at the opening in the inner rails. These

guard rails are from twelve to fifteen feet long and have to be placed from two and one-half to three inches from the main rail, opposite the frog, and then they deflect toward the ends so that they are four or five inches from the main rail. This 'permits the flange of the wheel of the approaching car to enter between the guard rail and the rail of the main track and pass through. The evidence given on the part of the plaintiff is to the effect that the plaintiff's foot was caught in the guard rail opposite the frog of the Lackawanna spur at about two feet from the west end of the guard rail. That at this point it was about three inches or three and one-sixteenth inches from the main rail; that there were a large number of guard rails in the defendants yards, placed about the same distance from the main rail. That in the examination made of them some were found to vary a little; one was found to be about two and three-fourth inches from the main rail and another to be three and one-half inches. The distance however in each guard rail varied in going from the end to the center of the rail. We fail to discover any evidence tending to show that the guard rail in question was improperly constructed, when we bear in mind that the end of the rail must be deflected from the main rail a sufficient distance so that the flange of the wheel cannot catch upon the end, and that the place where the plaintiff's foot was caught was within two feet of the end. All of the roadmasters and experts speaking upon the subject have left us to understand that three inches at that point would be about the necessary and approved distance for placing the guard rail.

We are, therefore, unable to discover any negligence chargeable upon the defendant as to the construction of the guard rail. As to whether or not it was the duty of the defendant to have caused blocks to be placed between the guard rail and the rail of the main track, a different question is presented. Some of the witnesses were of the opinion that the use of blocks was practical, and that they rendered them safer in this regard, whilst other witnesses were of the opinion that the passing trains soon loosened the blocks and rendered them dangerous, and that they did not make the track safer for the employees working thereon; that several instances had occurred on roads where the blocks were in use, of employees getting their feet caught and injured; that in the use of blocks they have

to be made thin so as to leave space for the flange of the wheel to pass through ; that the flange of the wheel extends down below the ball of the rail, so that the sole of the boot is still liable to be caught and held under the balls of the rail. It was the duty of the defendant to adopt the approved mode of construction in general use. Some of the railroads had adopted blocks to a limited extent and some had not. The defendant had not adopted them. As to whether or not their use would have rendered the tracks safer would doubtless have been a question for the jury, had it not been for the fact that the plaintiff in entering the employ of the defendant did so at a time before the blocks had been adopted by the defendant or used in its yards, and knowing that they were not in use.

At the conclusion of the evidence the defendant's counsel requested the court to charge that " the plaintiff, having entered the service of the defendant with its guard rails unblocked, and in practically the same condition that the guard rail in question was at the time of the accident, and the guard rails being in plain sight, and the plaintiff having continued in the service of the defendant with the guard rails in that condition, he assumed the apparent risk incident to their existence in the performance of his duty, and cannot recover." Also, that " if the jury shall find that at the time the plaintiff entered the defendant's employment the guard rails, on that part of the road where he worked, were unblocked, and practically in the same condition that the guard rail in question was at the time of the accident, and that he continued in that employment with the guard rails in the same condition up to the time of the accident, he cannot recover in this action." The defendant's counsel also requested the court to charge the jury " that the accident which caused the plaintiff's injuries was, under the circumstances of this case, a risk which he assumed and for which the defendant is not liable." The court refused to charge either of the requests and to such refusal the defendant duly excepted.

In the case of *Gibson* v. *The Erie Railway Company* (63 N. Y., 449) it was held that where a servant enters upon employment from its nature necessarily hazardous, he assumes the usual risks and perils of the service and also those risks which are apparent to ordinary observation. If he accepts service with knowledge of the character and position of structures from which employees might be

liable to receive injury, he cannot call upon his master to make alterations to secure greater safety, or in case of injury hold him liable; that the defendant was not liable for the death of a conductor of a freight train who was struck and killed by a projecting roof of a depot building where he had been for a long time familiar with the depot and the road passing it.

In the case of *De Forest* v. *Jewett* (88 N. Y., 264), it was held that the defendant was not liable for the death of a switchman and car-coupler, caused by stepping into one of the sluices and falling under the cars whilst working in a freight yard drained by a system of small, open ditches running across the tracks between the ties, which were in existence when he entered the employment, and remained without any change or alteration, every one of which was well known to him. Approving the rule laid down in the case of *Gibson* v. *The Erie Railway Company* (*supra*); *Lovejoy* v. *Boston and Lowell Railroad Company* (125 Mass., 79).

These guard rails were open, visible structures at the time the plaintiff entered the defendant's employ. They were located within the yard in which he was engaged to work. They were not blocked, and he knew that they were not. The only possible theory upon which a distinction can be made from the cases referred to, is that he did not know of the existence of this particular guard rail.

Upon his direct examination he testified that he had never been on that guard rail before, or done any braking or business over it. He then says: "I did not know whether there was a guard rail there or not, or what condition it was in." He, however, knew that there were guard rails opposite to each frog. He knew what they were for, and their shape; had seen scores of them. On his cross-examination he testified that it was a part of his business to go up to the Lackawanna spur; "if there were cars to go there to be put on the Lackawanna road, or if we wanted cars from there, it was my business to go there and do that work just as much as in any other part of the yard; that spur was there when I first went to work; *I first saw the spur in the first part of the time I worked there nights; I saw it there, and knew it was there;* I had never been on the spur before the accident." So that it would appear whilst he had never been on the spur before, he had seen it and knew of its existence.

It consequently appears to us that he did know of the existence

of this guard rail. He had seen and knew of the existence of this track running from the defendant's road on to the Lackawanna road. He was engaged at work upon this spur track at the time of the accident. Of necessity there had to be a switch, a frog and guard rails at that point. We fail to see how the case is distinguishable from either of the above cases, or why the same rule should not prevail.

Again, we question the right of the plaintiff to recover, even though he did not have actual knowledge of the precise location of the guard rail in question. It being an open, visible structure, he is deemed to have assumed the risk in his contract of employment. Had he stubbed his foot against the rail and fallen he would hardly be excused from contributory negligence by saying that he did not know that the rail was there.

The judgment should be reversed and a new trial ordered, with costs to abide event.

SMITH, P. J., and BARKER, J., concurred.

BRADLEY, J., concurs in the result upon the ruling of the trial court to the effect that if the plaintiff did not have actual knowledge of and had not seen the particular guard rail at which he received the injury, he was for that reason permitted to recover, although he was familiar with other guard rails in the yard in like manner constructed.

Present — SMITH, P. J., BARKER, HAIGHT and BRADLEY, JJ.

Judgment and order reversed and new trial ordered, costs to abide event.