## McGOVERN *v.* CENTRAL VT. R. CO.

(*Supreme Court, General Term, Third Department.*   July 6, 1889.)

1. NEGLIGENCE—DANGEROUS PREMISES.

In an action for negligently causing the death of plaintiff's intestate, it appeared that deceased, an employé in defendant's grain elevator, entered a bin through a trap-door in the bottom, to see if all the grain had run out, and that a large mass of grain which had adhered to the side of the bin fell upon and killed him. The elevator contained a large number of bins, all similar in arrangement. When the grain ceased to flow from the valves in the bottom of the bins while emptying, they were inspected either by looking into them from above or by entering them through the trap-door in the bottom, to see if any grain had adhered to the sides. The bins were inspected from above only when the men above were called upon to do so by those below. There was no evidence of any better appliances than those used by defendant. *Held,* that a finding that the bin and appliances were not improperly constructed or defective was sustained by the evidence.

2. MASTER AND SERVANT—NEGLIGENCE OF MASTER.

The evidence showed that the grain adhered to the sides of the bins only after it had become heated; that deceased knew that the grain in the bin in question was

heated; that defendant's foreman, who was present when deceased entered the bin, did not know that fact, and gave deceased no order concerning the inspection. *Held*, that defendant was not negligent in permitting deceased to enter the bin at that time.

Appeal from circuit court, St. Lawrence county.

Action by Catherine McGovern, as administratrix of the estate of Thomas McGovern, deceased, against the Central Vermont Railroad Company for damages sustained by her through the death of said Thomas McGovern, caused by the negligence of defendant. McGovern was employed by the defendant to work in its grain elevator at Ogdensburg. The elevator has 144 grain bins, some double and some single. Bin No. 101 was a double bin 50 feet deep, with sides 11 by 12 feet. Its bottom was 14 feet above the ground floor of the building and was shaped so as to form two hoppers, each with four inclined sides converging towards a point at their extreme bottom, in which valves were placed for the automatic outflow of the grain when open. A trap-door 11 by 15 inches was in the bottom of the bin in one of the inclined sides of the hopper. This was a man-hole for a workman to enter and inspect the bin and clean it out after the grain had ceased to flow from the valves. The trap-door opened inward and upward. On the 23d day of July, 1886, McGovern, in the usual course of his employment, entered the bin through the trap-door, along with one Fackerell. Fackerell observed that a large amount of grain had compacted together upon one side of the bin, and said to McGovern that they must get out and operate from the top of the bin. Fackerell descended through the trap-door and down a ladder. McGovern followed, but as he placed his feet through the trap-door the corn fell, pushed him down the incline of the hopper bottom to the valve, closed the trap-door, covered, smothered, and killed him. A nonsuit was directed at the close of plaintiff's testimony, and judgment entered thereon. Plaintiff appeals.

Argued before , EARNED, P. J., and LANDON and INGALLS, JJ.

*C. A. Kellogg*, for appellant. *Louis Hasbrouck*, for respondent.

LANDON, J. The single question presented by this appeal is whether the plaintiff's intestate, Thomas McGovern, met his death because his employer, the defendant, failed to perform the duty which his duty as master enjoined upon him. The elevator, bins, methods of construction, and appliances were, so far as it is material to examine them, substantially the same as they had been for 17 years. It does not appear that they had during that time ever brought injury upon any one, or that any better methods of construction or appliances had been tested and approved by experience elsewhere. The only fault alleged with respect to construction is that there was a trap-door in the bottom of this bin opening upward in such way, as was shown by the experience in this case, that if grain should glue together upon the side of the bin and remain there in large quantities after the flowing grain had discharged, it was liable when dislodged, or of its own gravity, to fall or slide down, and push the trap door over the opening and close it. It was so devised to prevent the grain from falling through this opening upon the floor below. All of the other bins—144 of them—had similar trap-doors. It does appear that such glued grain had fallen before, but no one had ever been hurt. The bin was 50 feet high. When the grain ceased to flow the bin was inspected, either from the top or bottom, to ascertain if all the grain had run out. A man was stationed upon the upper floor to make the inspection from above. This he did when requested by the men in charge below, the request being made through a speaking-tube. If the inspection was made from below the bin was entered through the trap-door in the bottom. Upon inspection the bin was cleaned out. Usually dry grain very fully discharged itself, and the workman who entered the trap-door and made the inspection swept out the bin. If grain adhered to the sides or corners of the bin, and was within reach from

the bottom, this workman would dislodge it with a pole or shovel, and then sweep the bottom. If the grain was heated, and it was apprehended that it glued together in large quantities, the inspection was usually made from the top, and proper appliances were operated from the top to dislodge the compacted grain. It is obvious that the evidence would not justify a finding of defective or improper construction or appliances. *Stringham* v. *Hilton,* 111 N. Y. 188, 18 N. E. Rep. 870, and cases there cited. Whatever danger there was arose from making the inspection from the bottom, instead of from the top. The intestate and one Fackerell were fellow-workmen charged with the duty of placing cars on the tracks on the ground floor beneath the bottoms of the bins, and of cleaning out the bins. They took turns in cleaning the bins, and it was McGovern's turn to clean this bin when the grain ceased flowing from it. Fackerell and McGovern remarked to each other as the grain was flowing that it was heated. McGovern had been in the same employment in this elevator for 13 years. After several cars had been loaded from this bin the corn ceased flowing. Linton, the foreman in charge of the elevator, was present. McGovern was in some other part of the building, and, as it was his bin to clean, a fellow-workman ran and called him, saying, "Your bin has gone to shoveling,"—that being the expression in use in the elevator to indicate that the corn had ceased flowing, and the bin needed cleaning. McGovern replied that that could not be so, as he had been into the bin the day before. He hastened to the bin. Meantime Linton, the foreman, had placed a ladder up to the trap-door, ascended the ladder, opened the door, and thrust upwards into the bin a pole, but, feeling nothing, descended, and handed the pole to Fackerell without remark. Fackerell ascended the ladder and made a like examination, and, finding nothing, descended, and went and procured a lantern. As Fackerell came down McGovern arrived, and without any remark made to or by him ascended the ladder, carrying a shovel, and entered the bin. Fackerell followed him with the lantern, and with a pole eight feet long. Fackerell made inspection, and, discovering that the corn adhered in a large mass upon one side of the bin, said to McGovern that it was dangerous; that they must get out and operate from the top of the bin. Fackerell then descended the ladder. McGovern followed, and put his feet out of the trap-door upon the ladder, when the corn—about 500 bushels—suddenly fell, and, pushing his body down the incline of the bottom of the bin, drew his legs back through the opening, closed the trap-door, and smothered and killed him before he could be extricated.

If Linton may be said to have stood in the place of master, he did not give McGovern any special order to enter the bin. Linton himself had undertaken to make inspection, but silently surrendered that duty to Fackerell and McGovern, who were accustomed to it. They proceeded to inspect the bin, and of course to decide what to do as the result of the inspection. They did inspect, and did decide that there was danger, and began to retreat, when the danger overtook McGovern. It is urged that the master ought to have forbidden inspection from the bottom and have permitted it only from the top in the first instance. The view is suggested by this accident, not by any previous experience. There is no evidence that Linton knew the corn was heated. McGovern did know it. He was both inspector and workman. He had had 13 years' experience in the business, and no inference of his incompetency as inspector is suggested by the evidence. The man on the upper floor only inspected from above when called upon from below to do so, and it was evidently McGovern's place to make such a call with respect to this bin if he thought it needful. He perhaps was a little hurried and confused by the fact that the bin "had gone to shoveling," in his temporary absence, and that Fackerell had taken up his work. But Linton gave him no orders, and did not interfere with him. We think the testimony wholly fails to show that the defendant was at fault. *Bohn* v. *Havemeyer,* 46 Hun, 557, 21 N. E. Rep. 402;

*Gibson* v. *Railway Co.*, 63 N. Y. 449; *De Forest* v. *Jewett*, 88 N. Y. 264; *Shaw* v. *Sheldon*, 103 N. Y. 667, 9 N. E. Rep. 183. Judgment affirmed, with costs. All concur.