PATRICK FARRELL, Respondent, *v.* WILLIAM P. TATHAM and Others, Composing the Copartnership Firm of TATHAM & BROTHERS, Appellants.

*Negligence — an employee in a shot factory injured while avoiding the splashing of molten lead — assumption by him of the risks of the employment.*

A person employed in a shot manufactory for some months, and thoroughly familiar with the process of lead melting as carried on there, who had seen molten lead splash out of kettles which were fitted with hoods, as well as those which were not so fitted, voluntarily assumes the risk incident to his employment, and cannot recover for injuries sustained in jumping from a platform in order to avoid molten lead which splashed from a kettle, known by him to be unhooded, immediately after the foreman had placed a pig of lead therein.

APPEAL by the defendants, William P. Tatham and others, composing the copartnership firm of Tatham & Brothers, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 7th day of July, 1898, upon the verdict of a jury for $200, and also from an order

entered in said clerk's office on the 9th day of July, 1898, denying the defendants' motion for a new trial made upon the minutes.

*Charles C. Nadal* [*Edward P. Mowton* with him on the brief], for the appellants.

*Patrick Keady*, for the respondent.

WILLARD BARTLETT, J.:

The plaintiff was injured in jumping from a platform to avoid the splashing of molten lead out of a kettle near which he was at work for the defendants in their shot manufactory in the city of New York. This kettle had no hood over it. There were twelve or fifteen kettles in all in the establishment, of which seven or eight had hoods over them, if we may believe the testimony of one of the defendants, while nearly all were hooded, if the evidence in behalf of the plaintiff is correct. According to this defendant the hoods are put over the kettles solely to carry off the fumes which rise from the melting metal, while according to the plaintiff's witnesses the hoods are intended to serve the further purpose of preventing the lead from splashing out on the workmen.

The splashing which the plaintiff sought to escape when he was injured immediately followed the act of his foreman in putting a pig of lead into the molten metal which already filled the kettle to three-fourths of its capacity. The evidence does not show whether the impact of the solid lead against the liquid lead forced the latter out of the kettle, or whether the splashing was due to the presence of moisture upon the surface of the pig lead, which moisture was changed into steam by the heat in the kettle, although there is testimony which suggests the latter as the true explanation of the accident. Whatever may have been the fact in this respect, the only ground which the proof discloses for charging the defendants with negligence is their failure to provide a hood for the kettle on the platform whence the plaintiff jumped.

While it was proved that the hoods did not wholly prevent the lead from splashing out, it is apparent that they must have afforded the workmen some protection. The plaintiff, however, knew that there was no hood upon the kettle on the platform where he was at work. He had been employed in the shot manufactory of the

defendants for months. He was thoroughly familiar with the process of lead melting as carried on there, and had repeatedly seen the lead splash out of this very kettle as well as out of the hooded kettles. He was aware of the danger and exposed himself to it, with complete knowledge as to its presence and character, and so far as appears, without complaint, objection or remonstrance. It seems to us that the only inference fairly deducible from the evidence is that the plaintiff voluntarily assumed the risk of any injury which might happen to him from the splashing of molten lead out of the kettle in the manner in which it occurred when he was hurt; and hence that he ought to have been nonsuited on the trial. (*Kaare* v. *Troy Steel & Iron Co.*, 139 N. Y. 369.)

This view compels us to reverse the judgment.

All concurred.

Judgment and order reversed and new trial granted, costs to abide the event.