Anna Carlson, as Administratrix, etc., of Franz Ludwig Carlson, Deceased, Appellant, v. The Monitor Iron Works, Respondent.

*Negligence — injury from flanges projecting from a tumbler in which castings are placed.*

A person who for ten years had been employed as a molder's laborer in a foundry, and for eight or nine days in the milling room of the foundry, where his duties consisted in placing castings in tumblers, from the sides of which wedges, flanges and rivets projected (which projections were obvious), assumes the risk incident to their existence, and in the event of his being killed by being caught by the tumblers, his employer is not liable to his administratrix for the damages resulting from his death.

APPEAL by the plaintiff, Anna Carlson, as administratrix, etc., of Franz Ludwig Carlson, deceased, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Westchester on the 13th day of December, 1897, upon the dismissal of the complaint at the close of the plaintiff's evidence by direction of the court after a trial at the Westchester Trial Term.

*Smith Lent*, for the appellant.

*W. Popham Platt*, for the respondent.

Goodrich, P. J.:

In March, 1897, the plaintiff's intestate, while working in the defendant's foundry at Sing Sing, received injuries from which he died. This action was brought to recover damages for his death, and at the trial, upon the close of the plaintiff's evidence, the complaint was dismissed. From the judgment entered thereon the plaintiff appeals.

Carlson, the intestate, had been employed for ten years as a molder's helper in the foundry of the defendant at Sing Sing. For eight or nine days before the accident which caused his death he had been transferred to work in connection with the milling room, the place of the accident. In this room there were five mills or tumblers, in a continuous line, into which "sprews" or pipe castings, as they came from casting, were placed for cleaning purposes. Each tumbler was about five feet in length and four in diameter, and was

fitted with folding doors on the side, one part opening up and the other down, which, when closed, were fastened with an iron strap or hasp and a wooden wedge to hold them securely. The wedge projected an inch or an inch and a half. There were also flanges and rivet heads on the side, projecting an inch or two from the staves or body of the tumblers. The latter were used to clean the pipes by attrition, and were made to revolve on an axis by shafting and wheels placed behind them. In front of them, and about two or three feet distant, was a railroad track, running parallel with the line of the tumblers and used for trucks upon which the pipe castings were brought to the tumblers. It was a part of Carlson's duty to unload the pipes, put them in the tumblers and fasten the doors. While in the act of lifting a pipe from a truck Carlson slipped or stumbled, was thrown against one of the tumblers, which was revolving, was caught in some way and thrown over it and wedged in between it and the shafting on the other side, and thus received the injuries which resulted in his death.

There was evidence that, about two years before this accident, the clothing of another person was caught in some part of a tumbler and that he was thrown over it upon the shafting; and that the clothing also of other workmen had been caught on projections of the tumblers.

There was also evidence to show that these flanges, rivets and wedges were "obvious to anybody's sight." The defendant moved to dismiss the complaint upon the ground that Carlson had been in the foundry for many years and was familiar with the machinery, and that whatever risks there were were obvious to him, and that he assumed these risks in his employment. The court granted the motion over the plaintiff's exception.

It is decided by a long line of cases that where a servant enters upon employment he assumes the usual risks and perils of the service, and also those risks and perils incident to the use of machinery, which are apparent to ordinary observation; and that he cannot call upon the master to make alterations to secure greater safety, or, in case of injury, call upon him for indemnity. (*Gibson* v. *Erie Railway Co.*, 63 N. Y. 449; *De Forest* v. *Jewett*, 88 id. 264; *Appel* v. *B., N. Y. & P. R. Co.*, 111 id. 550; *Kaare* v. *T. S. & I. Co.*, 139 id. 369; *Knisley* v. *Pratt*, 148 id. 372.)

In the last case it was also held that the servant, by entering upon the service with a full knowledge of the facts, waived, under the common-law doctrine of obvious risks, the performance by the master of the duty to furnish the special protection required by the Factory Act of 1890. *Kaare* v. *T. S. & I. Co. (supra)* is, perhaps, the most explicit authority for the dismissal of the complaint upon the facts in this case; and it was cited and followed in this court in *Farrell* v. *Tatham* (36 App. Div. 319), where, Mr. Justice WILLARD BARTLETT writing, we affirmed the general doctrine that, where a person was aware of the danger, and exposed himself to it with complete knowledge of its character and without objection or remonstrance, he voluntarily assumed the risk of injury from apparent dangers. This case falls within that principle.

The complaint was properly dismissed, and the judgment should be affirmed, with costs.

Judgment unanimously affirmed, with costs.