his decision we shall not interfere. The exceptions on pages 51–53, 58, 71, and 77 of the stenographer's minutes are not well taken. If the defendant employed the plaintiffs and promised to pay them, it is immaterial to whom the horses belonged.

Judgment affirmed, with costs.

(55 App. Div. 339.)

### RICE v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. November Term, 1900.)

MASTER AND SERVANT—PERSONAL INJURY—ASSUMPTION OF RISK.

    A brakeman who had been in the employ of the defendant company for over six months was injured on a stormy night by catching his foot in an unblocked switch guard rail, and being run over, while making up a train in defendant's freight yard. The brakeman was familiar with the yard, having worked therein a portion of each day during his employment, and the guard rails in that and all the other freight yards in which he was employed were not blocked. The brakeman's testimony showed that he knew that such rails were unblocked, but that he had not observed the one at which he was injured, and that a casual examination at the time of his injury would have shown the exact situation. *Held*, that he had assumed the risk of such injury, which would prevent a recovery from the defendant company.

Appeal from trial term, Oneida county.

Action by William H. Rice against the New York Central & Hudson River Railroad Company for injuries received while in the employ of the defendant. From a judgment in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals. Reversed.

The action was commenced on the 24th day of July, 1899, to recover damages sustained by the plaintiff on account of injuries received by him, alleged to have resulted through the negligence of the defendant.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

C. D. Prescott, for appellant.
Charles R. Covell, for respondent.

McLENNAN, J. Shortly before 6 o'clock on the morning of the 4th day of April, 1899, while the plaintiff, who was employed by the defendant as a freight brakeman, was engaged with the rest of a train crew in making up a freight train at Syracuse, in the freight yard of the Rome, Watertown & Ogdensburg branch of defendant's railroad, and while attempting to couple a car to such train, his foot slipped in at the end of a switch guard rail which was not blocked, became fast, he was unable to extricate it, and a moving car passed over his leg, so injuring it that amputation near the hip was necessary. The plaintiff seeks to recover because the defendant failed to block the end of the guard rail, contending that such failure constituted actionable negligence on its part. The defendant urges that the condition of the guard rail was apparent, and was in the same

situation as all other similar structures upon the railroad on which plaintiff was engaged, and precisely the same as it had been during plaintiff's employment, a period of 6½ months, and that the plaintiff knew or ought to have known the condition of such guard rails in defendant's yard, and therefore assumed all the risks incident thereto, and so is not entitled to recover in this action. Thus is presented the only question which need be considered upon this appeal; the answer depending entirely upon the facts, which, so far as material, are not in dispute.

The plaintiff at the time of the accident was, and for a period of 6½ months prior thereto had been, in the employ of the defendant as brakeman, engaged exclusively in making up freight trains and running them between Syracuse and Richland on the Rome, Watertown & Ogdensburg branch of defendant's railroad. In the performance of his duties the plaintiff was required to meet the other members of his train crew shortly after 4 o'clock each morning in the defendant's freight yard at Syracuse, on the main line of its railroad, where the engine and caboose of plaintiff's train were kept overnight, and make ready to start north immediately after the departure of the passenger train which was scheduled to leave Syracuse at 5:45 a. m., and then proceed north to the freight yard on the Rome, Watertown & Ogdensburg branch, make up a train of such cars as were there ready for transportation north, take from or leave cars at any intermediate station, and finally leave the entire train in the freight yard at Richland, the terminus of the division. In the afternoon the cars in the Richland yard to be transported south were made up into a train, and the crew started on the return trip, leaving cars at and taking such cars as were ready from the freight yards at the intermediate stations, and finally taking the entire train to the freight yard on defendant's main line in Syracuse, where it was left; and plaintiff's crew thereupon ceased to have any further duty to perform with respect to it, and their day's work was done. This was the daily routine of plaintiff's work, and had been during the entire time of his employment by defendant. When making up trains, which consisted in taking cars from the sidings in the yards, placing them in regular order on the main track, and coupling them together, the plaintiff's chief business was to turn the switches, direct the engineer by signal as to the movement of the cars, and couple them together when placed in position. It will thus be seen that the plaintiff was entirely familiar with the roadbed, structures, and appliances in the freight yards of the defendant upon the branch over which he operated, or at least that he might have been by the most casual observation. For more than six months, for six days each week, from early morning until night, often until after dark, he had been assisting in switching and moving cars in the freight yard where he was injured, and in the other yards upon the branch of the railroad upon which he worked. The guard rail in question was opposite a frog or switch, and was a necessary adjunct to it; there being necessarily two such guard rails at each frog, one upon either side. In the immediate vicinity of where the plaintiff was injured, and within a distance of 180 feet, there were at least six other

switches, with two guard rails at each, none of which were blocked. There were also switches exactly the same in construction at the yards at all the stations between Syracuse and Richland, and in the Richland freight yard, none of which were blocked at the time of the accident, or had ever been, except a part of those in the Richland yard, which the plaintiff testified he observed were blocked. The switches, frogs, guard rails, tracks, and other appliances upon the defendant's roadbed at the time and place of the accident were in plain view, and were in precisely the same condition in which they had been during the time the plaintiff had been in the defendant's employ. While there is evidence tending to show that the morning of the accident was somewhat dark and stormy, and that there was a light snow, it is apparent, even from the plaintiff's evidence, that a casual observation would have disclosed the exact situation as it existed at the place of the accident. It appears that in the freight yard at Syracuse, upon the main line of defendant's railroad, and in some of the other yards on the main line, guard rails were blocked, to the knowledge of the plaintiff, and that this was the case upon some railroads owned and operated by corporations other than the defendant.

It will thus be seen that the plaintiff in this case knew or ought to have known that, during the $6\frac{1}{2}$ months while he was in the defendant's employ prior to the accident, none of the guard rails in the yard in which the accident occurred, and in which he invariably commenced the duties of the day, were blocked; that this was true of each of the other freight yards between Syracuse and Richland, the route over which he passed twice a day; and that it was also true of a portion, at least, of the guard rails in the freight yard at Richland, the terminus of the division upon which the plaintiff operated. That this condition was open and apparent was discoverable simply by looking, and plaintiff himself testified that such condition was in fact known to him. He does testify that he did not know (had never observed) that the guard rail in which he caught his foot was not blocked; that he had never observed its exact condition, or had his attention specially called to it. But it is not pretended that at the time of the accident he expected or believed that the guard rail in question was in any different situation from the other guard rails, about which he concededly did know, or that his action was influenced in any manner by the belief that such guard rail was blocked. Under those circumstances, it is well settled that the plaintiff assumed the risk incident to working in a yard in which the guard rails, to his knowledge, were not blocked, and that the defendant is not responsible for injuries sustained by him, and which resulted therefrom. If the guard rails in the yards in which the plaintiff had been employed during his period of service had, as a rule, been blocked, and he, relying upon that fact, had assumed that the guard rail in question was blocked, and accident resulted because it was not, and the plaintiff could not have known that fact in the exercise of ordinary care and prudence, clearly the defendant would be liable, if it knew of such condition, or should have known of it in the exercise of ordinary care and prudence; but we think a railroad com-

pany has a right to employ men to operate a railroad and roadbed where the guard rails are not blocked, without being liable for injuries resulting to them because such guard rails are not blocked, provided such employés were informed of such situation, knew of its existence, or should have known of it in the exercise of ordinary care and prudence.

The general rule of law applicable to the facts of this case is not doubtful, and is correctly stated in the headnote in Gibson v. Railroad Co., 63 N. Y. 449, as follows:

"Where a servant enters upon employment from its nature necessarily hazardous, he assumes the usual risks and perils of the service, and also those risks which are apparent to ordinary observation. If he accepts service with knowledge of the character and position of structures from which employés might be liable to receive injury, he cannot call upon his master to make alterations to secure greater safety, or in case of injury hold him liable."

Substantially the same rule is laid down in De Forrest v. Jewett, 88 N. Y. 264, and in a large number of other cases decided by the court of appeals, many of which are cited upon the brief of appellant's counsel.

In the case of Appel v. Railway Co., 111 N. Y. 550, 19 N. E. 93, the plaintiff's intestate, who was a switch tender and car coupler, caught his foot in a guard rail in the freight yard where he had been employed for a considerable time, and he was run over by a car and killed. The facts in that case, so far as material, are identical with the facts of the case at bar, and it was held that no recovery could be had. The opinion of the court in that case, per Peckham, J., applies in every essential respect to the conditions here present, and must be regarded as controlling upon the rights of the parties to this action. Upon the facts disclosed by the evidence in this case, interpreted most favorably to the plaintiff, we are of the opinion that he failed to establish a cause of action against the defendant. It follows that the judgment and order appealed from should be reversed, and a new trial granted, with costs to the appellant to abide event.

Judgment and order reversed, and a new trial ordered, with costs to the appellant to abide event. All concur.