### RILLSTON *v.* MATHER *et al.*

*(Circuit Court, W. D. Michigan.* January 19, 1891.)

1. MASTER AND SERVANT—NEGLIGENCE—DANGEROUS PREMISES—PROVINCE OF JURY.
    In an action for personal injuries, it appeared that plaintiff was employed by defendants in an engine-room, in which there was a steam-heater, composed of coils of pipe, and in which defendants kept dynamite and boxes of fulminating caps. The latter were attached to fuses after being brought to the engine-room. This had been done by others until a few days before the accident causing the injuries sued for, when plaintiff was ordered to do it. Plaintiff was injured by an explosion which occurred, as he testified, one morning as he entered the engine-room. The heater was very hot at the time, some of the caps and dynamite were quite near it, and the engine jarred the building. The caps were extremely dangerous to one not understanding them, and the defendants failed to give the plaintiff warning of the danger. There was conflicting evidence as to how the accident was caused, and it might have been caused by the way plaintiff handled the caps. *Held,* that it was proper to submit the case to the jury.

2. SAME—NOTICE OF DANGER.
    Where the master puts the servant into employment attended with dangers of a latent character, he is bound to give the servant information of the incidents of the peril in which he is placed, if it is not reasonably to be supposed that the servant understands them.

On Motion for New Trial.
*F. O. Clark,* for plaintiff.
*Hayden & Young* and *A C. Dustin,* for defendants.

SEVERENS, J. Upon the trial of this cause it appeared that the plaintiff was employed by the defendants, who were working a mine in the northern peninsula of Michigan, in the management of that part of their machinery for lifting the ore out of the mine which was situated in an engine-room, as it was called, located near the opening of the shaft, upon the surface. The engine in this room was operated by steam, brought there from the boiler-works by an under-ground steam-pipe. The engine propelled the drums, which were in the same room, and which, by means of a car, cables, and tramway, drew up the ore and returned the car therefor by alternating motion. There was also in this room a heater composed of collected coils of pipe, supplied by steam from the boiler, the steam admitted to the heater being controlled by a valve. While the plaintiff was thus employed, the defendants, for greater convenience in supplying explosives to the men working in the mine, put into and kept in this engine-room a quantity of dynamite, which was allowed to be, put and scattered somewhat in different parts of the room, but near the heater, where it could be kept warm. They also put there, in boxes containing 100 each, exploders or fulminating caps, which were attached, after being brought there, to one end of a fuse. The fuse and cap thus attached were carried into the mine with the dynamite, and there connected and exploded by those specially charged with that part of the work. Until within a few days (according to the plaintiff's testimony not more than one or two) before the accident which followed, another man had been employed by the defendants to attach the exploders to the fuse in the engine-room where the plaintiff was at work. But that

man was sent to other employment, and the plaintiff was ordered to do his work of attaching the fuse to the exploders, which was done by inserting the end of the fuse into the open end of the cap, and pinching the latter tightly on. One morning soon after, while the plaintiff was coming into the engine-room, as he testified, an explosion of great violence occurred, filling the plaintiff's face with fragments of the copper of which the caps were made, and throwing him out through the door upon the ground. Very shortly after, a much more complete explosion occurred, scattering the engine-house, and leaving in its place a deep hole in the earth. The plaintiff was badly injured, and made totally blind. How the accident occurred was not clearly shown and was in doubt. There was evidence tending to show that the heater was very hot at the time; that some of the caps and a good deal of the dynamite were quite near it; and that there was a jarring motion of the building while the engine was running, and that both of these causes might contribute to the explosion. There was also evidence that the same might have occurred from the plaintiff's own incautious and perhaps careless handling of the caps and fuse; and this, to the judge, seemed the probable cause. But upon all these points the evidence conflicted. The caps were shown to have been of high sensibility, of a good deal of explosive power, and extremely dangerous to one not understanding their nature.

Under instructions as to the law substantially in accord with the doctrine as hereinafter stated, the jury rendered a verdict for the plaintiff in the sum of $10,000. The defendants move for a new trial, and the principal, I believe the only, ground of complaint is that the court should not have submitted the case to the jury, but should have directed a verdict for the defendants.

I am satisfied that the case was properly left to the jury upon the questions of fact, and that no substantial error in law of which the defendants can complain was committed at the trial. In my opinion, upon more careful consideration, the case of *Smith* v. *Car-Works*, 60 Mich. 501, 27 N. W. Rep. 662, was rightly decided, and is not in conflict with the decisions of the supreme court of the United States in holding that where the master puts the servant into employment attended with dangers of a latent character,—dangers which are not obvious to the common understanding, but known only to those educated and peculiarly informed upon the subject,—he is bound to give the servant information of the incidents of peril in which he is placed, if it is not reasonably to be supposed that the servant understands them. Beyond any doubt, it may be affirmed as settled that the employer is in duty bound to provide for reasonable security, having regard to the nature and extent of the danger to the employe in the prosecution of his work. *Hough* v. *Railway Co.*, 100 U. S. 213; *Railway Co.* v. *McDaniels*, 107 U. S. 454, 2 Sup. Ct. Rep. 932; *Railroad Co.* v. *McDade*, 135 U. S. 554, 10 Sup. Ct. Rep. 1044.

This principle has been most frequently applied to cases involving the duty of the master to provide reasonably safe and proper tools and machinery for his work. But such cases are mere illustrations of the principle which, in its reason, is applicable to any case where the employe

is placed in circumstances which may involve peril, from whatever sources arising. And, on the other hand, it is also settled that, as a general rule, the employe who engages in or continues in a hazardous business assumes the risk of such dangers peculiar to it as are obvious. *Hough* v. *Railway Co., supra; Randall* v. *Railroad Co.*, 109 U. S. 478, 3 Sup. Ct. Rep. 322; *Tuttle* v. *Railway Co.*, 122 U. S. 189, 7 Sup. Ct. Rep. 1166. And when it is said that he assumes the risk of dangers which are obvious, we have defined the limitation of the rule, and made the suggestion of its counterpart. If the danger be not obvious, the employe does not assume the risk. The duty of information is devolved on the master. If it is given, and the servant goes on with the employment, he takes the risk. This would seem to be the logical deduction from the propositions laid down in the cases already cited. The rulings and instructions upon the trial were substantially in accord with these propositions, and, upon a review of them, I cannot think there was any error; at least not any of which the defendants can complain upon the trial.

It is said that the evidence showed that the plaintiff had been a miner for many years, and must have known the dangerous character of the explosives by which he was injured. It is quite true that the plaintiff had been in such employment for a long time, but there was evidence which, if believed, showed that his experience in mining did not include blasting, and that it did not necessarily bring him to any definite knowledge of the peculiar properties of such materials as these exploders. My own conclusion upon the testimony as to the facts would have been different from that reached by the jury, but I think the questions, as presented, were of such a nature that the court was bound to submit them to the jury, and, having done so, under instructions as to matters of law not now complained of, their verdict must be respected. *Kane* v. *Railway Co.*, 128 U. S. 91, 9 Sup. Ct. Rep. 16; *Jones* v. *Railroad Co.*, 128 U. S. 443, 9 Sup. Ct. Rep. 118.

The motion for a new trial must be denied.