JOSEPH J. REDMUND *vs.* PAUL BUTLER & another, executors.

Middlesex.   January 19, 1897. — May 20, 1897.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & MORTON, JJ.

*Personal Injuries — Master and Servant — Obvious Risk — Law and Fact.*

At the trial of an action for personal injuries received by the plaintiff while in the employ of the defendant, there was evidence tending to show that the plaintiff, who had been employed for three or four months prior to the accident in moulding lead, was set to work melting dross, and that while pouring damp dross into a kettle of molten lead the kettle exploded and injured him. There was testimony on the part of the defendant that the plaintiff had been warned of the danger arising from the contact of dampness with molten lead, but the plaintiff denied that he had ever received any such warning. There was also testimony that the plaintiff had been instructed by another workman to pour the dross slowly from the kegs where it was stored into a box, and from the box into the kettle, and to spread his hands out over the dross as it was running from one receptacle into the other, instead of which the plaintiff poured the dross from the box at the moment of the explosion all at once, in a lump, and not slowly. This was not contradicted by the plaintiff, who did not testify in denial of the instructions as to pouring slowly and spreading his hands over the dross, but testified that he poured the dross in the manner he was instructed to. *Held*, that the risk was not of a character so obvious that the plaintiff must be taken to have assumed it; and that there was evidence in the case which the judge erroneously withdrew from the consideration of the jury.

TORT, for personal injuries occasioned to the plaintiff while in the employ of the defendants' testator, in consequence of the explosion of a kettle of molten lead.

At the trial in the Superior Court, before *Lilley*, J., there was evidence tending to show that the defendants' testator was a manufacturer of cartridges, and that he had in his employ one

Dimon, who had general charge and supervision of the work, and one Wells, who, as a subordinate employee, was properly intrusted by Dimon with the duty of seeing that the work was safely and properly performed; that the plaintiff had, for three or four months preceding the accident, been employed by the defendants' testator in melting lead, and dipping it out of a kettle while molten and pouring it into moulds; that on the morning when the accident occurred Wells instructed Pyne, the senior workman in the moulding room, to set the plaintiff at work melting dross; that, while so employed, the process used by the plaintiff was to pour the dross from kegs where it had been stored into a box from which, standing on a raised platform beside the kettle of molten lead, he emptied the box into the kettle; that after he had been so employed for about three hours he undertook to pour a box of dross into the kettle which was then partly filled with molten lead; that both the dross and the box from which it was poured were damp, and the contact of the dampness with the molten lead caused an explosion, by which the plaintiff sustained the injuries complained of. There was also evidence tending to show that by the contact of water or dampness with molten lead steam is quickly generated, and causes an explosion; and that, although the plaintiff had ample opportunity to examine the contents of the kegs and ascertain their condition, it did not appear that he did so; but there was also evidence that no dross had previously been melted during the period of the plaintiff's employment, and the plaintiff himself testified that he had received no warning as to the danger of allowing a contact of dampness and molten lead.

Pyne testified, for the defendants, that he instructed the plaintiff to pour the dross slowly from the kegs into the box, and from the box into the kettle, and in such case to spread his hands out over the dross as it was running from one receptacle into the other, and that he warned the plaintiff of the danger arising from the contact of water and molten lead, and instructed him to ascertain whether there was water or dampness about the dross.

The defendants also introduced evidence tending to show that the plaintiff poured the dross from the box at the moment of the explosion all at once, in a lump, and not slowly. This was not

contradicted by the plaintiff, nor did he testify in denial of Pyne with reference to the instructions as to pouring slowly, and spreading his hands over the dross, but he denied that any warning whatever was ever given him, and testified that he poured the dross in the manner he was instructed to.

At the close of the evidence, the judge ruled that the action could not be maintained, and directed the jury to return a verdict for the defendants ; and the plaintiff alleged exceptions.

*P. J. Doherty & A. E. Burr*, for the plaintiff.

*J. C. Burke*, for the defendants.

MORTON, J. Though the plaintiff had been at work for the defendants' testator three or four months before the accident in the same room where he was injured, it does not appear that he had been set at any time to melting dross, or that his attention had been called by anything which had happened to anybody else to the danger of putting damp lead into molten lead; and we cannot say that the risk arising from doing so was of such an obvious character and so well known that he must be held to have known of and understood it, and therefore to have assumed it. There was testimony on the part of the defendants that the plaintiff had been warned of the danger likely to arise from anything damp coming in contact with molten lead. The plaintiff, however, denied that he had ever received any such warning. On this point, therefore, there was evidence for the jury.

There was testimony from one Pyne, who was the senior workman in the room where the plaintiff was working, and who had been directed to set the plaintiff at work melting dross, " that he instructed the plaintiff to pour the dross slowly from the kegs into the box, and from the box into the kettle, and in such case to spread his hands out over the dross as it was running from one receptacle into the other." And the defendants introduced evidence tending to show that, instead of doing this, " the plaintiff poured the dross from the box at the moment of the explosion all at once, in a lump, and not slowly." " This," the exceptions state, " was not contradicted by the plaintiff, nor did he testify in denial of Pyne with reference to the instructions as to pouring slowly, and spreading his hands over the dross, but he denied that any warning whatever was ever given him, and testified that he poured the dross in the manner he was in-

structed to." This might have been taken to mean, either that he poured the dross as Pyne testified that he told him to, and as importing a denial therefore that he poured it all at once, or that Pyne told him to pour it all at once, and he did so, or that, whatever the instructions were as to the manner of pouring, he followed them. The jury might also have found, as the fair result of the testimony, that Pyne told him to pour as he said he did, but that the plaintiff poured it " all at once, in a lump," in which case we do not think that he would have been entitled to recover. Apparently this was the view taken by the judge who tried the case. But we cannot say that the jury might not have taken one of the other views which we have indicated, and if they did we cannot say that there was not evidence of negligence on the part of the defendants' testator and of those standing in his place in furnishing him with damp dross to be put into the kettle of molten lead, and in failing to warn him of the danger to be expected therefrom.

We think, therefore, that the exceptions must be sustained, and it is so ordered.                    *Exceptions sustained.*