HALL v. UNITED STATES RADIATOR CO.

(Supreme Court, Appellate Division, Fourth Department. May 22, 1900.)

1. INJURY TO SERVANT—ASSUMPTION OF RISK—QUESTION FOR JURY.
　　Plaintiff was employed by defendant as molder in a foundry about November 1st. He had never worked as a molder before, except two days, but had been employed in the foundry for several months. Defendant's foreman asked plaintiff if he wanted to work in the foundry, and the latter told him that he did not know anything about the work, whereupon the foreman stated that he would instruct him, and he did give him some instructions. Plaintiff was injured January 17th in the following year, on resuming work after the foundry had been closed for 15 days, by an explosion caused by pouring molten iron on a rusty mold to make a light

to work by. Plaintiff had not been instructed that molten iron coming in contact with rust would cause an explosion. *Held*, that the question of the assumption of such risk by plaintiff was properly submitted to the jury.

2. SAME—NEGLIGENCE OF MASTER.

A molder in a foundry, of but a few weeks' experience, was provided with rusty molds, and was not informed that molten iron would explode on coming in contact with rust. The room was poorly lighted, but the molder could have lighted the gas, but had been told to make a light by pouring molten iron on the mold; and in doing this the iron exploded, and he was injured. *Held*, in an action against the employer for such injuries, that the question of defendant's negligence was properly submitted to the jury.

3. SAME—CONTRIBUTORY NEGLIGENCE.

An inexperienced iron molder was injured by an explosion caused by pouring molten iron on a rusty mold to produce light to work by. He did not know, and was not instructed, that molten iron would explode on coming in contact with rust. He could have produced a light by lighting certain gas jets, but had been warned against their use, and told to pour molten iron on the mold to furnish light. *Held*, that the question of the servant contributing negligence was properly submitted to the jury.

4. SAME—INSTRUCTION—DUTY TO LIGHT GAS.

Where, in an action by a servant against his master for an injury partially resulting from a dark molding room, it appeared that the company furnished an adequate lighting plant, and that the gas could have been lighted by the servant, it was error to instruct that the question of the gas being lighted, and whether any negligence was to be imputed to the defendant, was for the jury, as the duty to light the gas was not on the defendant.

Appeal from trial term, Chautauqua county.

Action by George Hall against the United States Radiator Company for injuries received while a servant of defendant. From a judgment in favor of plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

The plaintiff was employed by defendant as a laborer from the latter part of July, 1897, to November 1st of that year. He helped in the shipping room and yard, and worked in all parts of the factory, including the foundry, where he carried flasks and patterns part of the time nearly every forenoon. He did whatever he was told to do by the boss. His previous employment had been farming, selling milk, and working for a nurseryman. He had worked two days as a molder in this foundry eight years prior to this employment. According to plaintiff's evidence, about the 1st of November, 1897, McNeal, the foreman of defendant's foundry, asked plaintiff if he wanted to work in the foundry as a molder. Plaintiff said in answer that he did not know anything about the work, to which McNeal replied that was all right; it would not take long to teach him; that he or they would show plaintiff all that was necessary to do the work as a molder; whereupon plaintiff was assigned to duty as a molder, at increased wages, and McNeal showed him how to mix the sand and ramp and dress the molds, and said he would have the other men show plaintiff anything that it was necessary for him to know. The space occupied by each molder is called a "floor." Plaintiff was furnished 32 flasks, which are described as square, iron boxes, 40 or 48 inches long, and 14 inches wide, open at the top and bottom, and divided longitudinally into two equal parts. The upper part is called a "cope," and the lower part a "drag." There is a metallic projection at each end of the cope and drag, about three inches long and four inches wide, and from the projections on the drag a pin passes through the projections on the cope to hold them in place. About half an inch from the end of the flask a sprue hole 1½ inches in diameter is left, on top of the mold, into which the molten iron is poured. About three inches from the sprue is a vent hole three-fourths of an inch in diameter, from which,

when the molten metal is poured into the mold, vapor, gas, or steam arises, rendering the atmosphere murky, and to some extent darkening the foundry. The molders are engaged until about 4 o'clock each day in preparing the forms in these flasks, and from that time until 5:30 or 6 o'clock in bringing the molten iron from a large pot in the cupola, into which it is run, in ladles which hold about 30 pounds, or sufficient for one flask. The ladles have handles five or six feet in length, and spouts through which the metal is poured into the sprue. Plaintiff did not fill daily, on an average, to exceed 25 of the 32 molds provided for his use. After he had been working as a molder for two weeks, the foreman complained that he was using a good many molds, and would have to do better. Plaintiff claims to have replied that he was doing the best he could; that it was so dark when pouring-off time arrived that he could not see to pour off well; that the foreman told him to pour a little of the molten iron on the sand on top as near the sprue hole as he could, which would light up the top of the flask so that he could see to pour the metal into the sprue hole, no matter how dark it might be; and that he thereafter followed this suggestion daily until December 13th, when the foundry closed temporarily. Windows afforded sufficient light in the middle of the day, but in the morning and late in the afternoon gas jets would be lighted by the men as required. One gas jet, seven or eight feet high, was located six or eight feet from plaintiff's floor, and there were other gas jets near by, but somewhat further removed. Plaintiff testified that the foreman cautioned the men to be careful about using the gas, and at times, when he found it lighted, would turn it off. On December 29, 1897, plaintiff received a letter from the superintendent, notifying him that work would be resumed on January 17th. He accordingly reported for duty on that day. A former molder, who had worked in the foundry during the time plaintiff was there, had then become foreman, and directed plaintiff to take his former floor, stating that he would find his flasks there, and informing him where the other tools were. Plaintiff found on his floor 35 flasks, smaller than he had been using, all entirely coated over with rust, so that he was obliged to scrape it off the edges that came together to prevent the metal flowing through. The superintendent and foreman passed where plaintiff was working several times that morning and saw the flasks he was using, and the foreman knew that they were rusty. During the afternoon of January 17th some of the gas jets in the foundry, which shed little or no light on plaintiff's floor, were lighted; but the jets nearest where he was working were not lighted, according to his testimony, but two witnesses called by defendant controverted this. Plaintiff poured off eight or ten flasks without artificial light, and from five to eight more aided by light produced by pouring some of the metal on the sand near the sprue, as he had been instructed. When he came with the next ladle full, it was so dark that he could not even see the flask, and he located it by feeling with the ladle, and then poured some metal out to make a light. It struck on the projection at the end of the flask, where the pin from the drag came up through, producing an explosion which caused the molten iron to fly into his face, resulting in the loss of the sight of his left eye, and slightly weakening the sight of the right eye. The explosion was caused by the contact of the melted iron with the rust, and an explosion will also result from contact between molten iron and any moisture. This danger is well known to experienced molders, who guard against it by sprinkling sand over any rusty part of the flask. Plaintiff testified that he was not aware of the danger, and had not been instructed concerning the same; but that he had observed that sparks were constantly flying from the large pot of molten iron in the cupola, and that he and the other molders wore caps to protect their eyes therefrom; that he had also noticed that when molten metal was spilled from the ladles, it would spatter, and his shoe tops and trousers had been burned to some extent from that cause, and he had observed the shoes and trousers of other molders similarly affected thereby. He had been instructed to warm his ladle to dry it before filling, and knew that other molders did the same. There were lamps in the core room, which the men were at liberty to use and did use in setting the cores in the molds. Plaintiff testified that he had never used a rusty flask before that day. Other witnesses testified that all flasks are rusty more or less. At the close of the plaintiff's case defendant's counsel moved for a

nonsuit on the grounds: (1) That plaintiff assumed the risk; (2) that he failed to show freedom from contributory negligence; (3) that he failed to establish a cause of action or to show that defendant was guilty of negligence. The motion was denied, and defendant excepted. At the close of the evidence the motion was renewed on the same grounds, denied, and an exception again taken. Other exceptions were taken during the trial, which will be considered in the opinion.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

Louis L. Babcock, for appellant.
Thomas H. Larkins, for respondent.

LAUGHLIN, J. This record presents a very close question as to whether the plaintiff did not, as matter of law, assume the risk. Benfield v. Oil Co., 75 Hun, 209, 27 N. Y. Supp. 16; Id., 151 N. Y. 671, 46 N. E. 1145; Farrell v. Tatham, 36 App. Div. 319, 55 N. Y. Supp. 119; Moore v. E. M. Birdsall Co., 22 Wkly. Dig. 528; Koehler v. Manufacturing Co., 12 App. Div. 50, 42 N. Y. Supp. 182, 1105; Bohn v. Havemeyer, 114 N. Y. 296, 21 N. E. 402; Carlson v. Iron Works, 38 App. Div. 39, 55 N. Y. Supp. 992; Martin v. Cook (Sup.) 14 N. Y. Supp. 329. But we think the evidence was sufficient to require the submission to the jury of this question, and also of the questions (1) whether the plaintiff was guilty of contributory negligence, and (2) whether defendant was guilty of negligence. The defendant had a right to presume that plaintiff possessed the average intelligence and knowledge of a common laborer and of a molder of his experience, and that he would exercise such intelligence and knowledge and ordinary powers of observation to prevent injury to himself. We are of opinion, however, that it required actual experience, special knowledge, or scientific skill to know that an explosion would be caused by the contact of molten metal with rust. While such an explosion results from natural laws, it is not a matter of common knowledge or observation. Davidson v. Cornell, 152 N. Y. 228, 30 N. E. 573; Smith v. Car Works, 60 Mich. 501, 27 N. W. 662; Rillston v. Mather (C. C.) 44 Fed. 743; McGowan v. Smelting Co., 3 McCrary, 393, 9 Fed. 861; Holland v. Railroad Co., 91 Ala. 444, 8 South. 524, 12 L. R. A. 232; Walker v. Railroad Co., 104 Mich. 606, 62 N. W. 1032; Swift v. Fue, 66 Ill. App. 651; Mather v. Rillston, 156 U. S. 391, 15 Sup. Ct. 464, 39 L. Ed. 464. If the jury believed the testimony of the plaintiff that he did not know the danger, and that his experience and observation had been insufficient to charge him with knowledge thereof, they were justified in finding that the defendant was negligent in not properly instructing him, or apprising him of the danger. According to the testimony of the plaintiff, he met with the injuries while endeavoring to follow the instructions of the foreman. Although the precise instructions of the foreman were to pour the molten iron on the sand near the sprue hole, to create a light, and on this occasion it was so dark that plaintiff could not locate the sprue hole sufficiently to enable him to pour the metal near it, yet, in view of such instructions, and under all the circumstances dis-

closed by the record now before us, it became a question for the jury as to whether he was guilty of contributory negligence.

It would seem that if the plaintiff's failure to light the gas jets in the vicinity of his floor, which he claims were not lighted, contributed to the accident, he would not be entitled to recover; but, there being a question of fact as to whether the gas was lighted, and the contention of the appellant on this subject being not that plaintiff was guilty of negligence in not lighting the gas, but that the failure to light the gas was not the proximate cause of the injuries, or imputable to defendant, we refrain from deciding whether it should be held as matter of law that such failure constituted contributory negligence. The complaint, among other things, charged the defendant with negligence in failing to properly light the foundry. After the court charged the jury, defendant's counsel requested the court to instruct the jury that they should disregard any question of defendant's negligence arising from its failure to light the plant in any other way than it did; whereupon the court said: "I decline to charge as requested, and give you an exception, but I charge you, gentlemen, that the defendant has provided proper facilities for lighting the factory, and I leave the question of whether that gas jet was lighted or not,—I leave it for you to say whether there is any negligence to be imputed to the defendant,"—to which defendant's counsel duly excepted. The effect of these instructions, which were the last given to the jury by the court, was to convey the impression that the defendant might be held liable for negligence in failing to light the gas jet, regardless of any other question. This charge constitutes reversible error. The duty of lighting the gas jets did not devolve upon the master. The court charged, as has been seen, that the defendant had furnished an adequate lighting plant. This constituted a full and complete performance of the defendant's duty in regard to lighting. The course of business, as shown by the evidence, was for the employés to light the gas when necessary. The failure to light the gas on this occasion was the negligence of the plaintiff or of his co-employés, for which the defendant is not liable. Kaare v. Iron Co., 139 N. Y. 369, 34 N. E. 901; Sharpsteen v. Mining Co., 3 App. Div. 148, 38 N. Y. Supp. 49.

The record also presents some exceptions to medical testimony of questionable competency, but, inasmuch as the error in the charge requires that a new trial be granted, upon which the objectionable evidence may be avoided, we do not deem it necessary to consider those exceptions.

The judgment and order appealed from should be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.