(64 App. Div. 89.)

### DYER v. BROWN et al.

(Supreme Court, Appellate Division, Fourth Department. July 23, 1901.)

1. INJURIES TO SERVANT—DEFECTS—WARNING—NEGLIGENCE.

Plaintiff's intestate, an experienced molder employed by defendant, after completion of his regular work, under direction of the superintendent and foreman, who were experienced molders, went to where they had arranged defective castings, and started to fill holes therein

with molten metal, when an explosion occurred, caused by rust and damp in the holes, injuring intestate, who had never done or seen such work before, and did not know of the effect of rust or damp thereon. To have properly prepared the castings for filling, the rust should have been chopped off, and the damp dried. *Held* sufficient to justify a finding that defendant was negligent in not examining the holes for such rust and damp, and warning intestate of the danger.

2. SAME—CONTRIBUTORY NEGLIGENCE.

The evidence was sufficient to justify a finding that intestate was not guilty of contributory negligence in not examining the holes before attempting to fill them.

Appeal from special term, Onondaga county.

Action for injuries to decedent by Flora Belle Dyer, as administratrix of Charles E. Dyer, deceased, against William H. Brown and others. From an order granting defendants' motion for a new trial, plaintiff appeals. Reversed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and RUMSEY, JJ.

Raymond Cobb, for appellant.
Charles L. Stone, for respondents.

McLENNAN, J. The action was commenced on the 29th day of December, 1896, by Charles E. Dyer, in his lifetime, to recover damages which he sustained because of the alleged negligence of the defendants. The action was tried on the 13th day of March, 1899, at a trial term of the supreme court held in and for the county of Onondaga, and resulted in a verdict of $2,000 in favor of the plaintiff, for which sum, together with costs, judgment was entered. After entry of judgment and the motion for a new trial had been granted, Dyer died, and his administratrix was substituted as party plaintiff. On the 19th day of March, 1896, Dyer was in the employ of the defendants, working in their foundry as a molder, and had been employed in that capacity for about two years prior to that time. He was a man of experience in his trade or calling, having worked at it for about 14 years prior to the time in question, and having spent two or three years prior to that time in learning such trade. While in the employ of the defendants he was required to make one casting each day at a particular place on the floor of the molding room, which was 119 feet long and about 38 feet wide. When such casting was completed his day's work was considered done, regardless of the length of time he actually devoted thereto. It appears that the castings made by Dyer and others, of the employés of the defendants were occasionally found to be defective, on account of the existence of shrink holes or blow holes, which were apparent from the outside, and it was deemed necessary or proper by the defendants to have such defective castings gathered together at some place upon the floor of the molding room, and there have such holes poured or filled with molten iron. In the molding department of defendants' business the defendant William H. Brown had special supervision, and one George Halliday was the foreman, had authority to hire and discharge the men, and he and the defendant Brown determined the work to be done

in the molding room, laid it out, and arranged for doing it, each
morning. March 19, 1896, was a dark and rainy day, so that in
the molding room it was somewhat dusk. About 5 o'clock in the
afternoon of that day Dyer had completed his mold or casting,
which constituted his day's work, and was standing by his flask
ready to pour his mold whenever he should be called. At that
time the defendants' foreman asked Dyer to assist in filling the
holes in the defective castings, which had been placed together,
by direction of the defendant Brown, at a place some 40 feet dis-
tant from where Dyer was at work. The defective castings had
all been arranged for pouring by the defendants' foreman, and every-
thing was put in readiness for such work under and by his direc-
tion, and before Dyer was asked to aid in pouring the holes. The
plaintiff's intestate at first refused to assist in this work, for the
reason, as stated, that he had completed his day's work, and did
not propose to do more. The evidence tends to show that he was
told by defendants' foreman that unless he complied with his re-
quest, and assisted in filling the holes in the defective castings,
he would be discharged, and that he thereupon consented to assist
in doing such work, got his ladle, filled it with molten iron, and
proceeded, in connection with another employé, to fill the holes in
the castings. Soon after the work was thus commenced molten
iron was poured into one of the holes by Dyer, an explosion oc-
curred, resulting concededly because there was water or rust in
the hole, and a piece of the casting struck plaintiff's intestate in
the eye in such manner as to cause its loss. There was evidence
tending to show that the roof of the building, immediately over
the place where the castings in question were being poured, was de-
fective, and in such condition that drops of water leaked through
onto the castings, in such manner as to make it a dangerous place
in which to perform the work in question, and that such condi-
tion had existed for such a length of time that the defendants knew
of it, or ought to have known of it, in the exercise of ordinary
care and prudence, and that Dyer did not know or have the means
of knowing of such condition, in the exercise of reasonable care.
It was urged by appellant's counsel that if the explosion occurred
from such cause the defendants are liable, for the reason that they
thus failed to furnish a reasonably safe place for the plaintiff to
perform his work. That question, however, was not submitted to
the jury by the learned trial court, and they were not permitted to
consider or pass upon that question. The court held and charged
the jury:

"If there was water in this hole, by reason of its falling down through
this roof while the plaintiff was at work there, that is not a basis for recov-
ery in this case."

And again:

"If this water got into the hole through rain falling through the roof while
the plaintiff was at work, that was something just as open to his observation
as it was open to the observation of the defendants and their foreman. He
could appreciate just as well as the defendants could if the water fell
through the roof onto the castings that it was liable to get into the hole
and cause an explosion. If he did not want to work there when the rain

71 N.Y.S.—40

was falling, and he could see that it was, then it was his duty to stop working unless they remedied it."

So that the consideration of that question is eliminated, for the answer to a proposition which was not submitted to the jury cannot be made the basis of a verdict, because we cannot assume that it would have been answered favorably to the plaintiff by the jury.

The only questions submitted to the jury were whether or not the defendants ought to have given Dyer notice or warning of the effect of dampness or rust being in the holes into which he was about to pour the molten iron, and that an explosion would likely result; "whether there was anything about this explosion, happening as it did, which these defendants ought to have notified and warned the plaintiff about"; and whether "Mr. Dyer himself knew, or ought to have known, that the explosion was liable to happen through the causes and in the manner in which this explosion did happen." The submission of these propositions to the jury was not excepted to by the defendants, and we must assume that each was answered favorably to the plaintiff's intestate.

It only remains to be seen whether such answers were justified by the evidence, and, if so, whether a cause of action against the defendants was established. The evidence clearly establishes that the defendant William H. Brown and the foreman Halliday were practical and experienced molders. Both fully understood the effect of pouring molten iron into damp or rusty holes, and the result which would be likely to follow. They had both frequently caused holes similar to those in the castings in question to be filled. Knew precisely how the work was to be performed, even to the minutest detail. As we have seen, the castings in question, five in all, each with a hole to be filled, were placed in position upon the floor of the molding room, at a place some 40 feet distant from where plaintiff's intestate was accustomed to work. They were so placed by the foreman, under the direction of the defendant William H. Brown, and, according to the testimony of Dyer, his only part of the work was to fill the holes with molten iron. He had nothing to do with the placing of the castings, the preparation of the holes, or making any of the arrangements preparatory to doing the work. He says that, after protesting, he finally consented to help do the work; walked over to where the castings were; found a fellow workman with a large ladle full of molten iron in his hands, that the two attempted to pour, and that he finally got a smaller ladle, and had emptied into it a portion of the iron from the large ladle, and then filled one hole from the small ladle, and that while attempting to fill the next the explosion occurred. Upon the evidence of one witness called by the defendants, and which is uncontradicted, the jury would have been justified in finding that it was necessary, in order to have properly prepared these castings for pouring, to have examined the holes to ascertain whether there was rust or dampness in them; that it was necessary, if rust was found, to chisel it off or remove it; and that, in case dampness was found, to dry the hole by placing a hot iron in it. So far as appears, no such examinations were made of the holes in question by the defendant

Brown or the foreman Halliday. No means were taken to ascertain whether the holes were damp or rusty, or to remove such dampness or rust if it existed.

Upon all the evidence, we think the jury were justified in finding that it was the duty of the defendants to have made, or caused to have been made, such examination, before calling one of their employés to come to the place with a ladle full of molten iron, and undertake the work under such circumstances as would prevent a proper investigation by him of the condition of the holes to be poured; and that they were also justified in finding that the plaintiff's intestate had a right to assume, when he came to the place where the castings were with a ladle full of molten iron, as he did under the direction of the foreman, according to his testimony, that the holes which he was to pour were in a proper and safe condition for that purpose; and that it was incumbent upon the defendants to have warned him against the danger which was to be apprehended from pouring melted iron into holes which had not been thus examined and treated. We think the jury were justified in finding that the defendants were guilty of negligence because they failed to properly examine the holes in question before directing the plaintiff's intestate to fill them, or because of the fact that they failed to notify him that such examination had not been made, and to warn him of the danger which might be expected in case the holes happened to be damp or rusty; and also that the jury were justified in finding that the plaintiff's intestate was not guilty of contributory negligence because of the fact that under the circumstances he did not make such examination himself. These conclusions are reached entirely independent of Dyer's experience as a molder and of his knowledge of the business. If one of the defendants in this case had held out a ladle in front of Dyer, and asked him to fill it with molten iron, we think Dyer would have been justified in doing as directed, without stopping to examine the ladle to see whether it contained water or was free from rust, and that if injury resulted to Dyer under those circumstances, from either cause, the defendants would have been liable. The case at bar is similar. The assertion of the part of the defendants to Dyer was, in substance: "The holes in these castings are ready; come with your ladle full of molten iron and fill them." We think, under such circumstances, the employé was not required to make a personal examination of each hole to ascertain whether it was safe for him to do as directed, in order to excuse himself from the charge of contributory negligence; and it is equally plain that the defendants did not discharge their full duty in the premises.

In addition, it may be said that Dyer testified that he had never poured holes of the character in question prior to the accident; that in all his experience as a molder he had not seen such work done; that he had not been required to do anything of the kind before during all the time he had been in the employ of the defendants; and he stated that he did not know or appreciate what the effect would be in case dampness or rust were present in holes of that character. It was for the jury to determine as to the truth of this tes-

timony. The question was submitted to them, and the verdict indicates that they believed and gave credit to the testimony, and, if such was the fact, then the defendants were guilty of negligence in not apprising him of the danger to be apprehended from attempting to pour molten iron into a rusty or damp hole. Hall v. Radiator Co., 52 App. Div. 90, 64 N. Y. Supp. 1002; Davidson v. Cornell, 132 N. Y. 228, 30 N. E. 573; Kiras v. Chemical Co., 59 App. Div. 79, 69 N. Y. Supp. 44; Smith v. Car Works, 60 Mich. 501, 27 N. W. 662, 1 Am. St. Rep. 542.

We think, under all the evidence in this case, it was a question for the jury to say whether Dyer had that information, experience, and skill which should cause him to know and appreciate the danger to be apprehended from pouring molten iron into a damp or rusty hole; that it was of a character to amply justify the verdict rendered; and that no error available to the defendants was committed by the learned trial judge upon the trial. It follows that the order granting a new trial should be reversed, and the judgment entered upon the verdict of the jury should stand, with costs to the appellant.

Order granting a new trial and setting aside and vacating the judgment reversed, with costs to the appellant. All concur.