FREEMAN *v.* EAST JORDAN & SOUTHERN RAILROAD CO.

1. APPEAL AND ERROR—DIRECTED VERDICT—EVIDENCE.

   On appeal from a directed verdict for defendant, plaintiff's evidence, taken as true, will be viewed most favorably to his contention.

2. MASTER AND SERVANT — NEGLIGENCE — WILFUL NEGLIGENCE — WORKMEN'S COMPENSATION LAW—BURDEN OF PROOF.

   In an action for personal injuries by a servant against a master who has not elected to accept the provisions of the workmen's compensation act (Act No. 10, Extra Session 1912), the burden of proving contributory negligence, and that it was wilful, rests upon defendant.

3. SAME—WILFUL NEGLIGENCE—QUESTIONS FOR JURY.

   Where plaintiff in such action violated an order to block the wheels of an engine when working under it, given him when he was first employed three years before, and which had been repeatedly violated by himself and others, in the presence of defendant's master mechanic, without reprimand or reassertion of the rule, it was a question of fact for the jury whether plaintiff's disregard of the rule constituted wilful negligence within the meaning of the statute, relieving the master from liability.

Error to Carlevoix; Mayne, J. Submitted April 4, 1916. (Docket No. 14.) Decided June 1, 1916.

191 Mich.—34.

Case by Mortem Freeman against the East Jordan & Southern Railroad Company for personal injuries. Judgment for defendant on a verdict directed by the court. Plaintiff brings error. Reversed.

*De Foe, Hall & Converse,* for appellant.

*Clink & Williams,* for appellee.

STEERE, J. On April 24, 1913, while employed by defendant at its roundhouse at East Jordan, Charlevoix county, plaintiff was injured by the drivewheel of an engine running over the ends of the two middle fingers of his left hand, resulting in the removal of each below the first joint. Defendant had not elected to accept the provisions of the workmen's compensation act, and this action was brought to recover damages for said personal injury, charged as imputable to defendant's negligence. Section 1, pt. 1, of that act (No. 10, Pub. Acts 1912, Extra Session [2 Comp. Laws 1915, § 5423]) provides:

"In an action to recover damages for personal injury sustained by an employee in the course of his employment, or for death resulting from personal injuries so sustained, it shall not be a defense:

"(a) That the employee was negligent unless and except it shall appear that such negligence was wilful;

"(b) That the injury was caused by the negligence of a fellow employee;

"(c) That the employee had assumed the risks inherent in or incidental to, or arising out of his employment, or arising from the failure of the employer to provide and maintain safe premises and suitable appliances."

At conclusion of plaintiff's testimony defendant's motion for a directed verdict in its favor was granted on the ground it appeared that plaintiff himself was negligent, and "that such negligence was wilful." This is the only question of serious importance raised. In

passing upon it plaintiff's evidence, taken as true, is to be viewed in the light most favorable to his contention. No fellow employee was connected with the accident, and under the statute plaintiff did not assume the risks incidental to his employment, nor those arising from a defective condition of the engine upon which he was at work when injured; neither was his negligence in the matter any defense, unless "wilful." From this record we may fairly enter upon an investigation of the question raised under the assumption that the slogan of "safety first" had not been loudly sounded in that locality, and that both parties were guilty of negligence causing or contributing to the injury.

At the time of the accident plaintiff was 24 years of age, and had been in defendant's employment for three years as night watchman at its roundhouse with varied duties, a part of them being those of "hostler," in railroad parlance, or to receive the engines as they came in from a run, clean, coal, and otherwise care for and make them ready for departure on the road when again wanted. Though not an engineer, he was familiar with his duties and acquainted with the peculiarities of engine No. 5, which he was caring for when injured. Its ash pan under the fire box was not self-dumping nor equipped with a blower, but had openings on each side and at the rear through which ashes were removed with a heavy hoe provided for that purpose. The pan could not be entirely cleaned from the sides. Plaintiff was instructed by the master mechanic to clean out what he could from the sides, which was a little over half, and then "hoe the rest from behind." To do this efficiently it was customary and necessary for the person doing the work to get under the engine back of the rear drive wheels. Plaintiff had been told by both the master mechanic and night foreman to do the cleaning in that way. When he began to work for defendant three years prior to

the accident, and the master mechanic instructed him how to do this work, which necessitated getting under the engine between the rails, he told him to always block the wheels of an engine before going underneath it. About a year before the accident the throttle of engine No. 5 became defective and out of repair owing chiefly to the notches in the quadrant and block of the spring clutch on the throttle handle having become so badly worn that they would not always remain meshed together where the released spring set and tightened them. A witness named Bowman, called by plaintiff under the statute, who had both fired and driven the engine for defendant, explaining the mechanism and defects, stated that when the engine was stopped in the usual manner "may be it would stay there and may be it wouldn't," but would sometimes loosen up and move after it had been in one position for some little time. The defective throttle opened by degrees, applying the power gradually, thus starting the engine slowly. Both Bowman and plaintiff reported and complained of this defect several different times to the master mechanic under whom they worked, but no repairs were made, and it remained in that condition until the accident occurred. Bowman testified that he and others, in cleaning out the ash pan of this engine, crawled under it and hoed the pan out at the back end. Plaintiff testified that after this condition developed he had trouble with the engine while at work cleaning it, and finding that by blocking the wheels it would be held stationary when the throttle started to work open until sufficient power developed to cause it to climb, or run, over the blocking, so that it would start off more quickly than when the blocks were not there, making it more difficult to escape when working beneath it. Some six or seven months before his accident he went to the master mechanic and explained this to him, after which he did not block it, and

the master mechanic saw him at different times working under the engine when it was not blocked; that not only the plaintiff, but other men, who had occasion to go under the engines, did so without blocking the wheels, at times when the master mechanic was present as well as when he was absent, and, so far as plaintiff knew, no objection was made to this, nor was he ever told but the one time, when he first began work three years prior to his injury, to block the engine before going under it, and subsequent to that time he had seen the master mechanic himself when in charge of work which required the men to be under the engines and they were not blocked; that he went under this engine without blocking "because she would climb over the blocking," and he considered it safer without; that when injured he knew he was told three years before not to go under without blocking, but did not at the time have it in mind or think about it, nor intend or expect to be injured.

On the occasion of the accident, while engaged in getting the engine ready for its trip upon the road the next day, plaintiff coaled it up at the coal sheds and ran it back up a slight grade to near the roundhouse and stopped it at a proper place to clean it, shutting the throttle off tight and seeing that the teeth in the latch properly meshed in the quadrant, and then proceeded to clean out the ash pan. It is admitted that it was his duty at that time to clean the ash pan upon the track outside of the round-house. While he was at this work under the engine it started up. His description of the accident is as follows:

"I noticed the engine starting. * * * I was in between the rails cleaning the pan. * * * I was on one foot and one knee, hoeing the pan, and when I seen her starting to move, I caught the rail and swung my body from under the pipe, and during the time I was swinging it got my fingers."

That there was evidence for the jury tending to show defendant's negligence, there can be no question, and that plaintiff's injuries arose out of and were sustained in the course of his employment, is clear. His assumption of the risk cannot be urged as a defense, and the extent to which he was negligent is immaterial, unless it was wilful. It is claimed, and was found by the trial court, to have been wilful because he knowingly violated an order, or failed to follow the instructions given him by the master mechanic when he entered defendant's employ three years before the accident, relative to blocking the wheels of an engine when going under it. It is not shown that this was a general order or rule promulgated by defendant, nor that such order had been given to or observed by other employees. If any such general order or rule was ever issued, which the record does not disclose, it is shown to have been repeatedly violated by employees in the presence of the master mechanic, from whom plaintiff received his order, without reprimand or reassertion of the rule. The proposition here is that the violation of this rule or order of the master is, not mere negligence, but wilful negligence *per se.* The general rule of law borne out by abundant authority is:

"The disobedience of a servant to reasonable rules or orders of his master, of which the servant has notice and which are then in force, is, if it proximately contributes to his injury, evidence of his contributory negligence" (1 Shearm. & Redfield on Neg. [6th Ed.] § 207*b*)

—which would make the question of mere negligence, by reason of violating an order or rule, an issue of fact for the jury.

It is also stated as a general rule borne out by decisions in this and other courts that:

"The violation by a servant of a rule or order promulgated by the master for the conduct of his business

is not negligence *per se,* and his disobedience will be
excused where the rule or order is unreasonable, where
obedience thereto is not practicable, or is unsafe, *
*  *" and "where a rule is habitually violated with
the knowledge and acquiescence, either actual or im-
puted, on the part of the master or those who are
acting as his representatives, a servant will not be
charged, as a matter of law, with contributory negli-
gence in acting in disregard of it," etc.  26 Cyc. p.
1269, 1270.

If plaintiff's testimony is true—and it is to be so
considered for the purpose of this inquiry—this order
to him, not shown to have been made general, had not
for a long time been complied with by himself or by
other workmen, to the knowledge and imputable acqui-
escence of the master mechanic from whom it was
originally received and to whom plaintiff had explained
the effect of its observance when working under en-
gine No. 5, because of its peculiar defects which did
not exist when the order was given, and he abandoned
its observance because he found it safer to do so.  He
testified to these things as facts known to him from
personal observation and experience.  Can it be said
under such evidence, to a certainty beyond where men's
minds might reasonably differ and where no reason-
able inference may be drawn to the contrary, that dis-
regard of this order to block the wheels was, as a mat-
ter of law, wilful negligence, which, whatever the
self-contradiction and inaptness of the expression, was
manifestly intended by the legislature to mean more
than mere, or ordinary, negligence?

We are not required to here consider the merits of
this case or what aspect it may assume when fully
tried.  The one controlling question now before us is
whether on this record plaintiff's testimony, taken as
true and viewed most favorably to his contention, af-
firmatively and conclusively shows him guilty of wil-
ful negligence, to the exclusion of all legitimate infer-

ence to the contrary. Primarily the burden of proving contributory negligence, and that it was wilful, rests upon defendant. From this record we are of the opinion that plaintiff's testimony still left it an issue of fact for the jury.

The judgment is therefore reversed, with costs to plaintiff, and a new trial granted.

STONE, C. J., and KUHN, OSTRANDER, BIRD, MOORE, BROOKE, and PERSON, JJ., concurred.