HIPNER *v.* STUART.

1. MASTER AND SERVANT—PERSONAL INJURIES—NEGLIGENCE—CON-
   TRIBUTORY NEGLIGENCE—WORKMEN'S COMPENSATION ACT.
   In an action by an employee against his employer for
   personal injuries, where the parties are not under the
   workmen's compensation act, the defendant is not entitled
   to the benefit of the defense of contributory negligence
   where it could not be said that, upon the record as pre-
   sented, plaintiff was guilty of wilful negligence (2 Comp.
   Laws 1915, § 5423).

2. SAME—WILFUL NEGLIGENCE—CONTRIBUTORY NEGLIGENCE.
   Although plaintiff, a core maker, was a man of mature
   years, had worked for defendant for nearly eight years,
   and had worked in other foundries, it could not be said
   that he was guilty of wilful negligence in inserting a
   cold, rusty iron clamp into molten metal contained in a
   mold, causing an explosion, where he testified that he
   did not know and had never been warned of the danger.

3. SAME—NEGLIGENCE—WARNING AND INSTRUCTING SERVANT.
   Where the danger of said explosion was not obvious but
   depended upon the operation of certain chemical laws,
   the question of defendant's negligence in failing to warn
   plaintiff was properly submitted to the jury.

On liability of master for injuries to servant caused by the ex-
plosion of molten metal with which he is at work, see note in
27 L. R. A. (N. S.) 953.

Error to Wayne; Collingwood (Charles B.), J., presiding.   Submitted January 3, 1922.   (Docket No. 3.)   Decided March 30, 1922.

Case by John Hipner against Johnston Stuart for personal injuries.   Judgment for defendant.   Plaintiff brings error.   Reversed.

*Dohany & Dohany*, for appellant.

*Corliss, Leete & Moody* (*Thomas T. Leete, Jr.,* of counsel), for appellee.

CLARK, J.   Plaintiff was a core maker employed by defendant.   Too, he prepared and dampened the sand for the molds and when the metal was run from the cupola to the ladles and from thence to the molds he assisted in the foundry room.   He was removing iron clamps from the molds after the metal had been poured.   He testified that he inserted into the gate box of a mold the end of a cold rusty clamp and that an explosion followed, injuring him; that his purpose in so doing was to learn if the metal had cooled sufficiently for removal of the clamps; that defendant's foreman had directed him so to do; and that he had not been warned of and did not know the danger. There was testimony that the inserting of a cold rusty iron clamp into the molten metal would be followed by an explosion.   Plaintiff had been in this employment for defendant nearly 8 years, had worked in other foundries and was a man of mature years.   He testified by the aid of an interpreter, gave conflicting and contradictory statements respecting the manner and cause of the accident, but he and his counsel, amending the declaration, finally settled down to the theory above set forth, which theory is supported by the testimony of another witness.   The negligence charged is

217 Mich.—33.

the failure to warn plaintiff of the danger of using the clamp in the manner indicated. The parties were not under the workmen's compensation act. Defendant had verdict and judgment. Plaintiff brings error.

The trial judge erred in giving the defendant in his charge the benefit of the defense of contributory negligence of plaintiff.

Section 1, part 1, of the compensation act (2 Comp. Laws 1915, § 5423) provides:

"In an action to recover damages for personal injury sustained by an employee in the course of his employment, or for death resulting from personal injuries so sustained, it shall not be a defense:

"(a) That the employee was negligent, unless and except it shall appear that such negligence was wilful." * * *

See *Lydman* v. *De Haas*, 185 Mich. 128; *Freeman* v. *Railroad Co.*, 191 Mich. 529; *Sergeant* v. *Railway Co.*, 198 Mich. 385; *Wulff* v. *Bossler*, 199 Mich. 70; *Lumbert* v. *Prince*, 203 Mich. 242.

As the case must go back for a new trial other questions should be considered.

Plaintiff's act in inserting the clamp may not be said on the record here presented to be wilful negligence. *Clem* v. *Chalmers Motor Co.*, 178 Mich. 340 (L. R. A. 1916A, 352); *Gignac* v. *Studebaker Corporation*, 186 Mich. 574; *Beaudry* v. *Watkins*, 191 Mich. 445 (L. R. A. 1916F, 576); *McMinn* v. *Brewing Co.*, 202 Mich. 414; *Rowe* v. *Leonard Warehouses*, 206 Mich. 493.

Defendant contends that there was no duty to warn plaintiff, an experienced employee, of the danger, citing *Nowakowski* v. *Detroit Stove Works*, 130 Mich. 308; *Smith* v. *Hyne*, 208 Mich. 334. The latter case is not applicable. In the former the majority opinion, although the facts are different than in the case at bar, seems to give some support to defendant's contention.

But the reasoning of the minority opinion, written by Justice MONTGOMERY, is more in harmony with other opinions of this court.

See, also, *Smith* v. *Car Works,* 60 Mich. 501 (1 Am. St. Rep. 542); *Ribich* v. *Smelting Co.,* 123 Mich. 401 (48 L. R. A. 649, 81 Am. St. Rep. 215); *Adams* v. *Refrigerator Co.,* 160 Mich. 590 (27 L. R. A. [N. S.] 953; 19 Ann. Cas. 1152); *Borkowski* v. *Radiator Co.,* 165 Mich. 266.

In the *Adams Case,* the plaintiff, 34 years of age, having 4 years' experience in the work, was injured by an explosion caused by molten material from a smelter coming in contact with water.     He claimed he did not know the danger and had not been warned thereof.     It was held (quoting from syllabus):

"An employer engaged in the manufacture of enamel which is brought in contact with water while it is in a molten condition, is under an obligation to acquaint an employee subject to risk, with the danger of explosion which is ascertainable from a knowledge of scientific principles, with which some one in the business should be acquainted.

"The question of the master's duty to warn his servant is for the jury in a case where an explosion occurred from the use of insufficient water in a tank employed to receive molten enamel."

Of the *Adams Case* it is said in a note, 27 L. R. A. (N. S.) 953:

"That an explosion will result from the contact of molten metal with water, ice, or snow is a well-recognized scientific fact, and the courts very generally agree with *Adams* v. *Refrigerator Co., supra,* in holding that it is the duty of a master whose business involves the handling of molten metal, to warn the servant of such dangers."

And the following from a note, 44 L. R. A. 75:

"The obligatory knowledge of the servant is not limited to facts which are ascertainable by the direct

use of the senses.   Everyone old enough to fill a position in which wages can be earned is presumed to be acquainted to some extent with the properties of matter and the laws to which it is subject.   How far the presumption should be carried will, of course, depend, not only upon the nature of those facts, whether simple or recondite, with a knowledge of which it is sought to charge the servant, but upon his opportunities for acquiring that knowledge, and upon his capacity for utilizing that knowledge.   Each case, therefore, must be decided with reference to the actual circumstance which it involves, the lines upon which the investigation should be conducted being indicated by the subjoined illustrative rulings.

"On the one hand, a servant of mature age and of experience is charged with knowledge of obvious dangers, and of those things which are within common observation and are according to natural law.   In such a case the knowledge of both parties is equal, and the master need not give warning of possible danger.   *
*   *

"On the other hand, when the danger to be avoided depends upon the operation of certain chemical laws which are known only to men who have received a special training, the obligation to instruct arises in all cases where the master has good reason to believe that the servant has not had such training.

"Such a danger is that which is due to the expansive force of steam generated by the fall of molten metal upon a sheet of ice.   *Smith* v. *Car Works,* 60 Mich. 501.   The court said:

" 'I do not think the court can presume that the common laborer in a foundry or machine-shop, such as this was, is possessed of the 'scientific knowledge necessary to enable him to comprehend and avoid any such, danger as overtook Mr. Smith on that icy way, resulting in his death; and I think, before he was called upon to perform the hazardous undertaking by Mr. Hoban, the foreman in charge, he should have been informed somewhat of its dangerous character.   This, however, was not done, and there is no pretense that the death of Mr. Smith was not caused by the explosion which followed the contact of the molten iron with the water and ice covering the dangerous passage over which the same was required to be carried.'

"In *Rillston* v. *Mather*, 44 Fed. 743, it was held that this case 'was rightly decided and is not in conflict with the decisions of the Supreme Court of the United States.' "

It is said in *Hall* v. *Radiator Co.*, 52 App. Div. 90 (64 N. Y. Supp. 1002) :

"The defendant had a right to presume that plaintiff possessed the average intelligence and knowledge of a common laborer and of a molder of his experience, and that he would exercise such intelligence and knowledge and ordinary powers of observation to prevent injury to himself. We are of opinion, however, that it required actual experience, special knowledge, or scientific skill to know that an explosion would be caused by the contact of molten metal with rust. While such an explosion results from natural laws, it is not a matter of common knowledge or observation."

In *Dyer* v. *Brown*, 64 App. Div. 89 (71 N. Y. Supp. 623), the plaintiff, a man of 14 years' experience as a molder, while pouring metal to fill holes in defective castings, was injured by an explosion caused by the molten metal coming in contact with water or rust or both in a hole, and it was said:

"The only questions submitted to the jury were whether or not the defendants ought to have given Dyer notice or warning of the effect of dampness or rust being in the holes into which he was about to pour the molten iron, and that an explosion would likely result; 'whether there was anything about this explosion, happening as it did, which these defendants ought to have notified and warned the plaintiff about;' and whether 'Mr. Dyer himself knew or ought to have known, that the explosion was liable to happen through the causes and in the manner in which this explosion did happen.' * * *

"We think, under all the evidence in this case, it was a question for the jury to say whether Dyer had that information, experience, and skill which should cause him to know and appreciate the danger to be apprehended from pouring molten iron into a damp or rusty hole."

"And certainly, within limits, the law will assume that every one has knowledge of destructive forces in the world and the powers of the earth and air. Of such is the knowledge that comes to every man of sound mind, in the ordinary course of his life, that fire will burn; that water will drown; that one may fall off a precipice; and the like. Recently in this court it was said of one who mounted a push car on a railroad, and went down a steep grade, to his hurt, that, knowing the grade, it was his own folly not to heed the law of gravitation; because it is known to all men of sound mind and of all degrees of intelligence that wheeled vehicles go down hill with increasing speed if left to themselves. And in this case the jury was told that the plaintiff could not have recovered for a burn caused by spilling the slag on himself. But the explosive power of hot slag when cast into water is not within the intelligence of ordinary men. It is doubtful whether many people of education know the force and violence of such an explosion; and, if fully informed, how many of them, when put to service at a smelting furnace, would recall their learning without a suggestion from some source.

"What the law will presume as to the knowledge of men in matters of this kind, may, in some instances, be a question of difficulty, and certainly it would not be easy to lay down a general rule on the subject. In the face of the plaintiff's testimony, however, to the effect that he had no knowledge or information of the danger to which he was exposed, it would be manifestly unjust in this instance to hold as a matter of law, that he had notice of it.

"After all, it is not so much a question whether the party injured has knowledge of all the facts in his situation, but whether he is aware of the danger that threatens him. What avails it to him that all the facts are known if he cannot make the deduction that peril arises from the relation of the facts? The peril may be a fact in itself of which he should be informed." *McGowan* v. *Smelting Co.*, 9 Fed. 861.

See, also, Baldwin on Personal Injuries (2d Ed.), § 348; 12 L. R. A. 232; *Ramsey* v. *Copper Works*, 78 N. J. Law. 474 (74 Atl. 437) ; *Redmund* v. *Butler*, 168

Mass. 367 (47 N. E. 108) ; *Swift & Co.* v. *Creasy,* 9 Kan. App. 303 (61 Pac. 314) ; *Utah Consolidated Mining Co.* v. *Bateman,* 176 Fed. 57; *Hill* v. *Drug Co.,* 140 Mo. 433 (41 S. W. 909).

Because of plaintiff's testimony that he did not know the danger and had not been warned of it, the danger not being obvious but depending upon the operation of certain chemical laws, and under the authorities above reviewed, it follows that the trial court properly submitted the question of defendant's negligence to the jury.    Other questions are not likely to arise upon a new trial.

Judgment reversed, with costs to plaintiff.    New trial granted.

FELLOWS, C. J., and WIEST, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.

The late Justice STONE took no part in this decision.