JUDSON L. BUTTERFIELD, as Administrator, etc., of ARTHUR O. BUTTERFIELD, Deceased, Respondent, *v.* THE STATE OF NEW YORK, Appellant.

Third Department, May 2, 1923.

**State — claim for death of member of New York State Guard who was killed in night while guarding canal lock — death caused by drowning — lock was not lighted — legal liability within meaning of Canal Law, § 47, was not established by proof.**

The legal liability against the State within the meaning of section 47 of the Canal Law was not established in proceedings to recover for the death of a member of the New York State Guard who was killed in the night by drowning while guarding a canal lock, where it appears that at the time of the accident, though the lock was unlighted, there was sufficient light to enable two companions of the decedent to see him patroling the lock from points more than eighty feet distant.

APPEAL by the defendant, The State of New York, from a judgment of the Court of Claims in favor of the claimant, entered in the office of the clerk of said court on the 28th day of June, 1922.

*Carl Sherman, Attorney-General [Albert E. Campbell* and *W. J. Wetherbee* of counsel], for the appellant.

*Brackett, Todd, Wheat & Wait [Benjamin P. Wheat* and *Sheridan P. Wait* of counsel], for the respondent.

H. T. KELLOGG, Acting P. J.:

The claimant's intestate, Arthur O. Butterfield, on the morning of August 14, 1917, was found dead in the waters of lock No. 7 of the Barge canal located at Fort Edward, N. Y. The lock is three hundred and twenty feet long, forty-five feet wide, and twenty-eight feet deep. When the water in the lock is at low level it is twelve or fifteen feet deep, and when at high level twenty-four or twenty-five feet deep. The cement walls of the lock are vertical, except at the upper edges where they are rounded to the horizontal in a space of from three to seven inches. Cement pavements of a minimum width of seven feet come to the edge of the wall upon each side of the lock. On both sides of the lock at each end there are gate recesses twenty-three inches deep and twenty-five feet six inches long, into which the lock gates fit when open, so that the sides of the lock then present an unbroken plane. On each side of the lock there are also small recesses seventeen inches wide and ten inches deep, into which ladders are set. Butterfield was a member of the New York State Guard. On August 12, 1917, Butterfield, with two other privates and a corporal,

was assigned the duty of guarding lock No. 7. It was war time, and we had entered the war. It is a matter of general knowledge that at this period railroad bridges, railroad culverts, and canal locks were guarded out of fear of their destruction at the hands of enemy aliens. On August 14, 1917, Butterfield came on duty just after midnight. For several weeks previously the electric lights, with which the lock, for purposes of lighting vessels locking through, was well provided, had been turned off at midnight by the locktenders. They were turned off upon the night in question. It was the duty of Butterfield to patrol on both sides of the lock. He was seen patrolling along the east side of the lock at one o'clock and again along the west side at one-thirty o'clock. He was not again seen alive. At about five-thirty in the morning his body was found in the waters of the lock. It was the theory of the claimant that he accidentally slipped or fell into the lock, from some point near one of the recesses, and was drowned. No complaint was made that the lock was faulty in its construction. The sole complaint was that there was negligence in not lighting the locks so that Butterfield might patrol in safety; that the darkness thereby occasioned resulted in his precipitation into the lock. The Court of Claims has so found, and has made an award to claimant of $5,000.

The award cannot be sustained " unless the facts proved therein make out a case which would create a legal liability against the State, were the same established in evidence in a court of justice against an individual or corporation." (Canal Law, § 47, as amd. by Laws of 1915, chap. 494.) It has been held that a private corporation which provides an adequate lighting system for lighting its factory is not liable where an employee is injured owing to the failure of other employees to turn on the lights. (*Hall* v. *United States Radiator Co.*, 52 App. Div. 90.) The contrary was held by a divided court in *Dorney* v. *O'Neill* (60 App. Div. 19). In the former case an employee was injured while pouring molten iron in a dark place. In the latter case an employee was injured while leaving his master's premises after the day's work and while in a dark passageway leading to the street. The claimant's intestate was not in a like situation. He was not an employee who was engaged in work in reference to the operation of the canal lock. His duties were similar to those of a night watchman. It has never been held, and, we take it, will never be held, that a private employer who engages a watchman to guard his factory is chargeable with negligence if he fails to light the grounds and various rooms of the plant so that the watchman can travel about with perfect safety. The claimant's intestate was employed to guard a canal lock against enemies who with dynamite

or otherwise might attempt to wreck it. It might well be argued that his personal safety was enhanced rather than diminished by turning off the lights. Had the lock been kept in a glare of light he would have made a ready target for a bullet. Moreover, he was employed in the military service. Safe places to work are not guaranteed to military men. Their duty is to meet danger, not to be guarded from it. The situation of the claimant's intestate was such that the claim presented for his death is even less favorable than would be the claim of a private night watchman injured in the dark. Moreover, it is not at all clear that the unlighted condition of the lock entered in as a cause of the accident which resulted in death. It was a starry night, and sufficiently light for two companions to see the claimant's intestate from points more than eighty feet distant. It cannot well be inferred, therefore, that by reason of darkness the claimant's intestate could not see the outline of the lock and so stepped over or fell from its edge. For all these reasons we think the award was not justified by the proof.

The award should be reversed and the claim dismissed.

KILEY, VAN KIRK, HINMAN and HASBROUCK, JJ., concur.

Judgment reversed and claim dismissed.